SLESINGER *v.* BRESLER.

1. STATUTE OF FRAUDS—CONTRACT OF SALE—EVIDENCE.

Testimony of the proposed purchaser under a written contract for the sale of personal property which omitted to name the purchase price, that the seller estimated the property to be worth from $60 to $150, but that witness had never seen it, is insufficient to bring the contract within the statute of frauds as being for the sale of chattels of the value of $50 or more.

2. CONTRACT—PAYMENT—SUFFICIENCY OF TENDER.

A tender of notes under a contract for the sale of personal property providing for the payment of the purchase price in notes, but silent as to place of payment, will not be held insufficient because the notes were made payable at a specified place, where the seller, upon being told to examine them and see if they were correct, made no objection to their form, but stated that he had changed his mind in regard to the sale.

Error to Bay; Maxwell, J. Submitted May 1, 1896. Decided July 21, 1896.

*Assumpsit* by Victor Slesinger against Charles A. Bresler for the breach of a contract of sale. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*James H. Davitt* (*T. A. E. & J. C. Weadock,* of counsel), for appellant.

*H. H. & C. H. Hatch,* for appellee.

MOORE, J. The parties to this litigation made a contract reading as follows:

"Contract made and entered into between Charles A. Bresler, of Bay City, Michigan, and Victor Slesinger, of Saginaw, Michigan, witnesseth as follows: In consider-

ation of two thousand dollars ($2,000), to be paid by said Slesinger to said Bresler, as hereinafter provided, Bresler hereby sells, transfers, and sets over to Slesinger the following personal property:  *  * · * ·  For the aforesaid consideration said Bresler also sells, transfers, and assigns to said Slesinger the good will of his business of dealing in hides, pelts, wool, furs, tallow, lard, grease, etc., and said Bresler further stipulates and agrees that he will not engage in the business of buying, selling, or dealing in hides, pelts, wools, furs, tallow, lard, grease, etc., in Bay City or West Bay City or in the city of Saginaw, or at any point between said city of Saginaw and cities of Bay City and West Bay City, during the time that Slesinger continues in such business in the cities or either of the cities above named; *and second party agrees to buy the interest of first party in the grease and boiler works at Fitchville.*  It is further agreed that said Bresler may, and he does hereby, reserve the right to purchase of said Slesinger a one-half interest in the property and good will this day sold to Slesinger,  *  *  *, and if said partnership shall be afterwards dissolved for any cause, then, after such dissolution, all his right in the good will of said business shall be terminated, and the stipulations above binding him not to engage in said business within the cities and at the other points above specified shall be again at once in force, and binding upon him, unless otherwise agreed upon.

"The sum of two thousand dollars, the consideration of this agreement to be paid by said Slesinger, shall be paid as follows:  According to the terms of twelve promissory notes of one hundred and sixty-six and 66⅔ dollars ($166.66⅔) each, payable one in two months, one in four months, one in six months, one in eight months, one in ten months, one in twelve months, one in fourteen months, one in sixteen months, one in eighteen months, one in twenty months, one in twenty-two months, one in twenty-four months, after this contract takes effect, without interest until after maturity.

"This contract shall take effect, and possession shall be delivered to said Slesinger by said Bresler, on the 1st day of December, 1894.   (Made in duplicate.)

"CHARLES A. BRESLER.<br>"VICTOR SLESINGER."

The original contract is all typewritten except the signatures and the words italicized.   The italicized words

were interlined and written with a pen, after the contract was signed, but before it was delivered. On Saturday, December 1st, plaintiff went to the office of the defendant, who was absent, and tendered to the parties in charge of his office 12 notes, all of which were alike except as to time of payment, which times corresponded with the times mentioned in the contract. One of the notes reads as follows:

"$166.66⅔-100.          SAGINAW, MICH., Dec. 1, 1894.
  "Two months after date, I promise to pay to the order of Chas. A. Bresler, one hundred sixty-six 66 ⅔-100 dollars, at First National Bank, Saginaw, E. S.   Value received.          VICTOR SLESINGER."

The notes were not accepted. On the following Monday, plaintiff went, with the 12 notes in his possession, to the office of Bresler, and had a conversation near there with him, and showed him the notes, and told him, "Here are the papers I agreed to give you," and told him to examine them, and see if they were according to the contract; that he was ready to take possession of the place according to the contract. Bresler told him he had changed his mind. Bresler would not accept the notes. Some efforts were made to settle their differences, which failed, and plaintiff brought suit against defendant to recover damages for breach of the contract.

On the trial, evidence was introduced showing the facts just stated, and the plaintiff offered to show further that, at the time the contract was made, the business to which it related was in a depressed condition; that between then and the 1st of December the business became very profitable, and that the reason why Mr. Bresler refused to carry out the contract was because the business was more valuable than it was when he agreed to sell it. The court refused to allow the plaintiff to show this, and because the trial judge believed the notes tendered were not such notes as the contract required, from the fact that they were payable in East Saginaw, he refused to allow plaintiff to put in any further proof

in the case. The plaintiff having stated he had no further evidence as to offer or tender of other or different notes, the judge directed the jury to render a verdict for the defendant. Plaintiff appeals.

Defendant insists there was no error, for three reasons:

*First*, because the contract is void under the statute of frauds, as that part of the agreement reading, "And second party agrees to buy the interest of first party in the grease and boiler works at Fitchville," does not fix any price which is to be paid for the property, and that the interest was worth more than $50, and for that reason no part of the contract could rest in parol.

*Second*, because the notes tendered were not such notes as were called for by the contract; and,

*Third*, because, at the time plaintiff claims he tendered these notes, he did not also offer to perform that part of the contract relating to the Fitchville property.

We do not think the claim that the contract was within the statute of frauds is well taken. The only proof of the value of the interest Bresler had in the Fitchville property is the testimony of the plaintiff that Bresler told him it was worth from $60 to $150, but that he (Slesinger) had never seen it; so that it cannot be said that there is any proof as to its value. As to the claim that the plaintiff did not offer to pay for the interest in the Fitchville property, we can get no other impression from the evidence than that he offered, at his interview with Bresler, to perform his part of the contract.

The only remaining question is, did the plaintiff do all he was required to do in relation to the notes? If he did, he was entitled to put in the rest of his proof, and to have his case go to the jury. It has been held that if one who is bound to pay money to another at a certain time and place is there with the money in his pocket for the purpose of paying it, and is prevented from paying it only by the absence of the payee, this has the full effect of a tender. *Gilmore* v. *Holt*, 4 Pick. 258; *Southworth* v. *Smith*, 7 Cush. 391.

In *Fosdick* v. *Van Husan*, 21 Mich. 575, a tender, as

money to be paid on a mortgage, of legal-tender notes was made. In the Supreme Court it was argued this tender was not good, because the notes were not the medium in which a lawful tender could be made. The court used language as follows:

"The defendant refused to receive the tender, but did not place his refusal on the ground now urged in his behalf. His sole objection was that he was entitled to a much larger sum than $350, and not that the notes tendered were not worth $350. As he did not refuse to receive the notes on the ground that they were depreciated, or even not lawful money (grounds which, if taken, might have been obviated if thought necessary), but treated the offer as one of $350 in fact, and placed his refusal upon a ground having no relation to the form of the tender or the character of the medium, we think he is precluded from raising the objection now urged."

To the same effect is *Beebe* v. *Knapp*, 28 Mich. 54.

In *Browning* v. *Crouse*, 40 Mich. 342, where money was due, the tender was made by sending a check instead of the money. In his opinion Justice COOLEY said:

"A formal tender of payment was not made, but a check was sent, which the plaintiffs were at liberty to receive or reject, at their option. They chose to return it, but there is no pretense that they did so because they objected to that mode of payment. Indeed, the previous payments had been made in the same way, and had been received without objection. Plaintiffs are therefore not in position to insist upon the failure to offer payment in money as a failure to complete, or offer to complete, the compromise."

It seems to me the case at bar is within the reason of these cases. The plaintiff was at the office of the defendant, with the notes offered in evidence, and made a tender of them. No objection was made to the form of them. On the following Monday he sought out Mr. Bresler, and informed him he had come to perform the contract, and offered him the notes, and asked him to examine them, and see if they were correct. If Mr. Bresler had said he objected to the notes because they

were payable in East Saginaw, they could have been easily changed; but he did not put his refusal to receive them upon that ground, but said he had changed his mind. We do not think his position tenable.

Judgment is reversed, and new trial ordered.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, C. J., did not sit.