## ROSENTHAL v. RAMBO ET AL.

[No. 20,616. Filed December 7, 1905.]

1. APPEAL AND ERROR.—*Prior Appeal.*—*Law of the Case.*—The law as decided in a former appeal is the law of the case through all subsequent stages. p. 589.

2. SAME.—*Pleading.*—*Conclusions of Law.*—*Same Question Presented in Both.*—Where the same question is presented on the pleadings and on the conclusions of law, a decision on the conclusions of law renders superfluous a decision on such alleged errors on the pleadings. p. 589.

3. BILLS AND NOTES.—*Negotiability.*—A note payable at a bank within Indiana and providing that "without notice, the payee or holder may extend the time of payment of the principal," is not negotiable as an inland bill of exchange. p. 590.

4. GUARANTY. — *Sales.* — *Animals.*—*Specific Purpose.*—Where a vendor guarantees a horse as suitable for a specific purpose and such horse was at the time of the sale worthless for such purpose, the purchaser's subsequent care of such horse can not affect the vendor's liability on such guaranty. p. 590.

5. ANIMALS. — *Diseases.* — *"Heaves." — Words and Phrases.* — "Heaves" is the same as "broken wind," and "broken wind" is a result of an advanced stage of "thick wind." p. 592.

6. GUARANTY. — *Fitness for Specific Purpose.* — *Privilege of Return if in Good Condition.*—Where a vendor guaranteed a horse for a specific purpose, giving the purchasers the privilege of returning, if unfit for such purpose, provided the horse is "in as sound and healthy condition as he now is," such purchasers may return such horse though his condition be worse, if such condition was caused by the natural course of diseases which such horse had, in their incipient stages, at the time of such sale. p. 592.

7. SAME.—*Return of Property.*—*Objections.*—*Waiver.*—Where a vendor in his guaranty gave the purchasers of a horse the privilege of returning such horse on April 1, 1898, if unfit for the purpose for which he was sold, and such purchasers returned such horse in November, 1897, and such vendor objected only because of the condition of the horse, his right to object at the trial because of a return at a wrong time is waived. p. 593.

8. BILLS AND NOTES. — *Non-Negotiable.* — *Defenses.* — *Notice.* — Where the payee of a non-negotiable note executed in June, 1896, for the purchase price of a guaranteed horse, transferred

such note two months later to plaintiff, and such horse did not fulfil the guaranty, but such payee and the makers agreed prior to April 1, 1897, to an extension of such guaranty to April 1, 1898, the plaintiff having notified such makers of such assignment a week before the return of such horse in November, 1897, such makers can defend against such note by showing a breach of such guaranty.   p. 593.

9. BILLS AND NOTES.—*Non-Negotiable.*—*Assignment.*—*Equities.*—The assignee of a non-negotiable note takes the same burdened with the equities of the parties thereto.   p. 594.

10. SAME. — *Consideration.* — *Failure of Guaranty.* — A non-negotiable note executed for the purchase price of a horse guaranteed to perform specific work is not assignable so as to free the assignee from the defense of a breach of such guaranty. p. 597.

From Superior Court of Marion County (56,415); *Vincent G. Clifford,* Special Judge.

Action by Moses Rosenthal against George A. Rambo and others.   From a judgment against plaintiff and a decree for defendants on their cross-complaint, plaintiff appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.   *Affirmed.*

*William S. Christian* and *Gavin & Davis,* for appellant. *Roberts & Vestal,* for appellees.

HADLEY, J.—The material facts involved in this action, as disclosed by the special findings, are as follows:   On June 18, 1896, Crouch & Son were engaged at LaFayette, Indiana, in the business of importing and selling stallions for breeding purposes.   Appellees, residing in and about Noblesville, formed a partnership, under the name of the Noblesville German Coach Horse Company, for the purpose of buying and breeding a stallion.   Crouch & Son, learning of their purpose, shipped to Noblesville the imported coach horse Ferdinand, and there kept the horse at a livery barn for one week, when they sold him to the appellees.   The sale was consummated on June 18, 1896, at the price of $2,000, payable in instalments, which were evidenced by three

promissory notes, the first one maturing November, 1897, being the one in suit. As a part of the purchase agreement, Crouch & Son executed to appellees a written guaranty as follows: "LaFayette Stock Farm.    Crouch & Son, Proprietors.   Guaranty.   We have this 18th day of June, 1896, sold the imported German coach horse Ferdinand, German No. 225, American No. 885.   We guarantee said horse to be a satisfactory breeder to said Noblesville German Coach Horse Company, of Noblesville, Indiana, county of Hamilton, providing he has proper care and exercise.   If said stallion should fail to be a satisfactory breeder to said company, we agree to take said stallion back, and said company are to take another stallion of equal value in his place.   If said stallion should fail to be a satisfactory breeder to said company, said stallion must be returned to us here, at LaFayette, Indiana, April 1, 1897, in as sound and healthy condition as he now is.   J. Crouch & Son.

"P. S.   If said horse should fail to be a satisfactory breeder to said company, and we could not agree upon said horse, we agree to let them pick a man, and, if they could not agree, let them select a third man, and let them select said horse for said company.   J. Crouch & Son."

Appellees took immediate possession of the horse, kept him in the same barn where he had been placed by Crouch & Son, and continued him in the care of the same veterinary who had been employed by Crouch & Son to attend and treat him after his arrival at Noblesville, and before his delivery to appellees.   During the season of 1896 the horse was not a satisfactory breeder to appellees, and they so notified Crouch & Son before April 1, 1897.   Thereupon Crouch & Son wrote appellees, proposing to extend the guaranty another year, as follows: "If you think he [said horse meaning] has not been as you like him, and would like to try him this season, we will extend our guaranty another year, or, if you think he won't we will exchange with you.   Hope this will be satisfactory.   We remain yours, J. Crouch & Son."

The offer was accepted by appellees, though they were at the time ready and able to return the horse. Under the extension agreement, appellees kept the horse through the season of 1897, during which time he was worthless and unsatisfactory to appellees as a breeder. After notifying Crouch & Son that the horse was still unsatisfactory, on November 24, 1897, appellees shipped the horse to LaFayette, and placed him in Crouch's barn without the latter's knowledge, where he remained until the commencement of this suit, without any agreement or understanding between Crouch & Son and appellees affecting the title and ·status of the horse or rights of the parties. When appellees returned the horse to LaFayette they demanded of Crouch & Son another stallion in his place, under the terms of the guaranty, which demand they failed and refused to comply with, giving as their sole reason that they could not accept a return of the horse in the condition he was in.

The horse was imported from Germany by Crouch & Son a short time before his sale to appellees, and at some time before the sale had contracted a disease known as gangrenous dermatitis, which is very rare among native-bred horses, but not uncommon among horses bred in Germany. The disease manifested itself in sores, mostly on the legs and about the root of the tail. At the time of the purchase there was on the horse some small sores, but they were not recognized as indicating any disease. In other respects the horse was then sound and in good condition, except that he was a little thick-winded. Before the purchase Crouch & Son had the sores on the horse treated by a competent veterinary surgeon, and after the purchase appellees had the same surgeon continue his treatment as long as they kept the horse in their possession. The sores increased in number and size as the hot weather of 1896 advanced. In the fall and winter of 1896 and 1897 they healed, and showed very little in the early spring of 1897, but as warm weather

came on they broke out again with more virulence than in 1896. Three of his colts begotten in 1896 were affected with the same disease.

The horse, while in the possession of appellees, received proper care and feeding for an American-bred stallion, but his food was not proper for a German-bred horse, and Crouch & Son, though informed of the condition of the horse, and requested to come and see him, had not at any time before the horse was returned to them at LaFayette in November, 1897, informed appellees that a German-bred horse required any different care and feeding from one American bred. In November, 1897, when the horse was lodged in Crouch & Son's barn in LaFayette, the diseases, gangrenous dermatitis and thick wind, which at the time of the purchase were in their incipiency, had fully developed, affecting his general condition, causing him to be poor in flesh and unsightly, and he had also become more thickwinded, and had the heaves. In these respects, only, the horse was not in as sound and healthy a condition as when delivered to appellees, and was and had been worthless as a breeder from the time he was delivered to appellees.

About two months after their execution, the notes were for value assigned by indorsement in writing to appellant, who is still the owner, and all are now in the hands of an attorney for collection, and, unless canceled, suit will be brought thereon by appellant, who claims the full amount thereof. Appellees had no notice or knowledge of the sale and transfer of said notes to appellant, or other person, at the time of the extension of the guaranty contract, nor did they receive any such notice or knowledge until one week before they returned the horse to Crouch & Son at LaFayette.

The complaint, in a single paragraph, is in the ordinary form of action on an assigned promissory note. Crouch & Son, the assignors, are not made parties. There are four answers and four paragraphs of cross-complaint, the sev-

eral paragraphs of cross-complaint corresponding in substance to like-numbered paragraphs of the answers. The first paragraph of answer was want of notice of the assignment, worthlessness of the horse, and hence no consideration. The second was want of notice and breach of guaranty. The third included all in the second, and, in addition, stated that the horse was diseased, which condition was, at the time of the purchase, known to appellant's assignor, and was not known to appellees, whereby the latter were damaged to the amount of all the notes. The fourth covered the grounds of the two preceding, and counted on failure of consideration. The cross-complaint sought a cancelation of the notes. Demurrers having been overruled to the several paragraphs of answer and cross-complaint, the case was put at issue by replies to the answer and answers to the cross-complaint. There was a trial by the court, and a special finding and decree in favor of appellees.

In a former appeal to the Appellate Court (*Rosenthal* v. *Rambo* [1902], 28 Ind. App. 265), the judgment was reversed for insufficiency of each affirmative paragraph
1. of the answer and also of the cross-complaint. Upon the return of the case to the lower court, each paragraph of said answer and cross-complaint was amended to conform to the opinion of the Appellate Court, and their sufficiency will therefore be considered as settled.

There is also some further controversy over the subsequent pleading, but as all the questions presented arise under the exceptions to the conclusions of law, we will give
2. the pleadings no further notice. The conclusions of law were as follows: "(1) The note sued on in the complaint and notes set out in the cross-complaint and sought to be canceled are not negotiable by the law merchant, and are subject to any defenses the makers had against the payee. (2) The horse having proved unsatisfactory as a breeder, the defendants had a right at any time during the year for which the guaranty was extended to return him, and demand ·

another stallion. (3) ·Upon the return of the horse by defendants, and the refusal by Crouch & Son to give to them another stallion, there was a total failure of consideration for the notes. (4) The remedy at law does not afford defendants adequate remedy, and they are entitled, as against the plaintiff, to the equitable relief prayed for in the cross-complaint." To each of which conclusions of law the plaintiff excepted.

The notes, though payable at a bank in this State, contain the words, "without notice, the payee or holder may extend the time of payment of the principal," etc.

3. Hence there is no contention but that the first conclusion is correct. *Glidden* v. *Henry* (1885), 104 Ind. 278, 54 Am. Rep. 316; *Merchants, etc., Sav. Bank* v. *Fraze* (1894), 9 Ind. App. 161, 53 Am. St. 341.

The real battle-ground is furnished by the second and third conclusions of law. Invoking the familiar doctrine that he who asserts the benefits of a contract must show compliance on his part with its terms, appellant earnestly contends that, under the facts disclosed by the special findings, appellees fail to bring themselves within the terms of the contract in more than one particular.

It is contended that the findings do not show that the horse received the proper care and exercise required of appellees by the contract. The contract provides: "We

4. [Crouch & Son] guarantee said horse to be a satisfactory breeder to said Noblesville German Coach Horse Company, * * * providing he has proper care and exercise." It will be noted that the proviso relates to the quality of the horse as a breeder. The findings concerning the guaranty are, in substance, that said horse while in the possession of the appellees received proper care and feeding for an American-bred stallion, but his food was not proper for a German-bred horse, and Crouch & Son did not at any time prior to November 24, 1897—the date of the return of the horse to LaFayette—inform the appellees

that a German-bred horse required any different feeding from one American bred. But "said horse was worthless as a breeder from the time he was delivered to the defendants until his said return to LaFayette." The horse was purchased for the particular purpose of breeding, and, if he had a defect when delivered to appellees that rendered him worthless for that purpose, it is not apparent how the matter of his care and exercise could affect the liability of Crouch & Son on their guaranty. For illustrative cases see *Arnold* v. *Wilt* (1882), 86 Ind. 367; *Dill* v. *O'Ferrell* (1873), 45 Ind. 268; *Mooklar* v. *Lewis* (1872), 40 Ind. 1; *Shirk* v. *Neible* (1901), 156 Ind. 66, 83 Am. St. 150.

It is further claimed by appellant that appellees defaulted in the condition that, if the horse proved unsatisfactory, they would return him to the sellers at LaFayette "in as sound and healthy a condition as he now is." Appellees concede that when returned the horse was diseased, thin in flesh, unsightly, and had the heaves, or thick or broken wind, but claim exoneration from liability or fault on the ground that the condition of the horse was solely brought about by the natural progress and development of diseases with which he was stricken at the time of the purchase. The fact is, as found by the court, that when the horse was returned to LaFayette the diseases, gangrenous dermatitis and thick wind, which at the time of the purchase were in their incipiency, had progressed and fully developed, affecting the horse's general condition, causing him to be poor in flesh, and unsightly, and he had become more thick-winded, and had the heaves, and that in these respects, only, the horse was not in as sound and healthy a condition as when delivered to appellees.

The question, then, comes to this: Did the undertaking of appellees to return the horse in as sound and healthy a condition as he was then in, if he proved unsatisfactory, embrace the increased unsoundness and ill health that should result from the natural progress and development of dis-

eases incipient in the animal at the time of the contract, and of which neither buyer nor seller had knowledge? We must take a reasonable view of the contract. The subject was, a few weeks before, imported by the seller from Germany, to sell for breeding purposes. For $2,000 the horse was offered and sold for breeding purposes. Though the writing is silent, it is perfectly plain that the parties contracted understandingly, on the basis that the horse was then in a sound and healthy condition, and that the purchasers assumed, during the trial period, only the risks incident to their own default, and to the accidents and diseases that might be incurred by the horse subsequently to the purchase.

But it is argued that the horse when returned had the heaves, a new and distinct disease from gangrenous dermatitis, and that the horse was not in as sound and 5. healthy a condition, even though the effects of gangrenous dermatitis are not to be taken into account. Under the authorities, heaves is another name for broken wind, and broken wind is a natural result, or may be, of an advanced stage of thick wind. Oliphant, Law of Horses (5th ed.), 70, 98; Hanover, Law of Horses (2d ed.), 96; Webster's International Dict. Should we, therefore, as urged by appellant, give the language of the contract a strict and technical construction, it will not help him.

The horse had gangrenous dermatitis and thick wind in incipient stages when sold. In respect to these he was then unsound and unhealthy. When returned a 6. year and a half later he was only unsound and unhealthy from the same diseases and their effects. The condition was the same, and different only in degree. *Roberts* v. *Jenkins* (1850), 21 N. H. 116, 53 Am. Dec. 169; *Kenner* v. *Harding* (1877), 85 Ill. 264, 28 Am. Rep. 615; *Coates* v. *Stephens* (1838), 2 Mood. & R. 157; *Schurtz* v. *Kleinmeyer* (1873), 36 Iowa 392; *Woodbury* v. *Robbins* (1852), 10 Cush. 520; *Hobart* v. *Young* (1891), 63 Vt. 363,

Rosenthal *v.* Rambo—165 Ind. 584.

21 Atl. 612, 12 L. R. A. 693, note p. 696; Tiedeman, Sales, §194, p. 286. We are not, therefore, able to agree with appellant that the horse when lodged in the stable of Crouch & Son at LaFayette in November, 1897, was not in as sound and healthy a condition, within the meaning of the contract, as when delivered into the possession of appellees.

Neither can we agree with the appellant's counsel that a return of the horse and demand for another prior to April 1, 1898, was premature and unavailing, because not 7. in accordance with the contract. It is true that under the extended contract the stipulation was for a return on April 1, 1898, if he proved unsatisfactory, but when the return and demand were actually made in November, 1897, Crouch & Son made no objection to the irregularity in time, but placed their refusal to accept and exchange the horse solely on the ground of "the condition he was in." Upon well-settled principles this was a waiver of all other objections to the exchange. *Gould* v. *Banks* (1832), 8 Wend. *562, 24 Am. Dec. 90; *Eaton* v. *Emerson* (1837), 14 Me. 335; *Adams* v. *Helm* (1874), 55 Mo. 468; *Lee* v. *Bangs* (1890), 43 Minn. 23, 44 N. W. 671; *Browning* v. *Crouse* (1879), 40 Mich. 339; *Hayward* v. *Munger* (1863), 14 Iowa 516; *Lathrop* v. *O'Brien* (1894), 57 Minn. 175, 58 N. W. 987; *Slesinger* v. *Bresler* (1896), 110 Mich. 198, 68 N. W. 128; *Brewer* v. *Fleming* (1865), 51 Pa. St. 102; 28 Am. and Eng. Ency. Law (2d ed.), 22.

It is next insisted that the acceptance by appellees of Crouch & Son's proposition to extend the guaranty another year from April 1, 1897, was the making of a new 8. contract, which could not operate to the prejudice of the assignee. Concerning this point the findings disclose that prior to April 1, 1897, appellees notified Crouch & Son that the horse was not satisfactory, and on said date they were able and ready to return him as provided in the contract, but in response to the notice Crouch & Son proposed in writing to extend the guaranty for another year

if appellees would like to make further trial of the horse
during the approaching season of 1897. The proposition
was accepted by appellees in writing. To a limited extent
this was the making of a new contract. It was new so
far as it was the first meeting of the minds of the parties
for a continuance of the force and effect of the original con-
tract of guaranty for another year. When the extension
was executed the rights and obligations of the parties as
between themselves were precisely the same as if the life
of the original guaranty contract had been for two years in-
stead of one. But the extension would not operate injur-
iously to affect existing rights of third persons in the con-
tract as a whole. The time for the maturity of the notes
was not affected by the extension agreement. So if ap-
pellant, as assignee of the notes, was at the time of the ex-
tension in a situation to shut the door against defenses by
appellees, his position was not rendered less advantageous
by the extension. On the other hand, if the appellees at
the time, as makers, were under circumstances that would
enable them successfully to set up against appellant, as
assignee, failure of consideration, we do not see how the
extension in and of itself could injure him.

It therefore remains to be determined when, if at all,
and by what event, appellees lost their right to set up a de-
fense to the notes in the hands of an assignee for
value. The facts are, the note in suit—the first one
maturing—became due in November, 1897, the
others later, and appellant became the assignee for value
in two months after their execution in June, 1896,
but appellees were kept in ignorance of the assignment
until one week before they returned the horse in No-
vember, 1897; that is, appellees received no notice of
the assignment until fifteen months after it had been
made, and eight months after they had agreed to an
extension of time for testing the horse. In the first place,

Rosenthal *v.* Rambo—165 Ind. 584.

under the laws of this State, there are two kinds of assignable promissory notes—one governed by the law of merchants, and the other subject to any defenses held by the maker before notice of assignment—and the debtor when called upon for his note has the right to execute one or the other, as his interests and discretion may lead him. These things appellant knew, or should have known, and when notes of the baser class were presented to him for purchase, if he failed to inquire of the makers for defenses, he impliedly agreed to take his chances. Taking what seems to be a rational view of the transaction, we find that the horse, the subject of negotiations, was imported from a foreign country, and was unknown. Appellees were making the purchase for a special purpose, and at large cost. The horse might prove successful, and he might turn out to be worthless as a breeder. The sellers might have been of doubtful solvency. Under these circumstances, it is but reasonable, and it will be presumed from the contract, that appellees required as a condition of the purchase a guaranty that the horse should prove satisfactory after trial, and the acceptance of non-negotiable notes, payable at a time subsequent to a reasonable test of the horse—to wit, sixteen months after date—is manifestly in pursuance of said requirement.

So it appears that the right to defend for possible failure of consideration was reserved by appellees in the making of the contract, and is, therefore, a vested right rooted in the foundations of the transaction. It embodies the principle of an indemnity mortgage. There might be no occasion to exercise the right, but it would subsist as a protection during the contract period for a testing of the horse. Suppose appellees had received notice of the assignment on the day it was made, to wit, in August, 1896, months before it was possible, in the nature of things, to determine whether the horse was within the terms of the

guaranty, will any one argue that it would not be preju-
dicing appellees' right to the benefits of their contract—
the right to defend—by shutting them out of court because
their defense was not fully matured and actionable at that
time ? The position of appellant, that no defense, within
the meaning of §7517 Burns 1901, §5503 R. S. 1881,
existed before his assignors refused, in November, 1897, to
take back the horse, or exchange another for him, as stipu-
lated, is untenable. If Crouch & Son had not assigned the
notes, could there be any doubt of appellees' right to set
up failure of consideration against them ? How did the as-
signment of non-negotiable paper make any difference ? Un-
der §7517, *supra,* any promise in writing to pay money, to
do a particular thing, or to perform any stipulation therein
mentioned, is assignable, so as to vest the property in the
assignee.

The notes in suit belong to this class of instruments. As
to them there can be no such thing as a *bona fide* or good-
faith purchaser, vesting in some assignees a better title
than the payee and assignor possessed, as recognized in
instruments negotiable by the law merchant. Though
promises to pay money, these notes are transferable in the
same manner as written promises to deliver particular ar-
ticles, or to perform particular acts, and appellant, as
assignee, took the property in them charged with all the
equities, conditions and burdens that adhered to them,
precisely as they were held by Crouch & Son. *Smith* v.
*Rogers* (1860), 14 Ind. 224; *Wetter* v. *Kiley* (1880), 95
Pa. St. 461, 40 Am. Rep. 670; *Cohen* v. *Prater* (1876), 56
Ga. 203; *Benton* v. *Klein* (1867), 42 Mo. 97; *Howell* v.
*Medler* (1879), 41 Mich. 641, 2 N. W. 911; *Second Nat.
Bank* v. *Wheeler* (1889), 75 Mich. 546, 42 N. W. 963;
*Herod* v. *Snyder* (1874), 48 Ind. 480; *Henry* v. *Gilliland*
(1885), 103 Ind. 177; *Holman* v. *Creagmiles* (1860), 14
Ind. 177.

NOVEMBER TERM, 1905. 597

Indiana Trust Co. *v.* International, etc., Assn.—165 Ind. 597.

The promise to pay the notes was based on the corresponding promise of Crouch & Son to make good the horse as a satisfactory breeder, and the duty to pay, in whole or in part, remained inchoate during the breeding test, and until performance or default by the sellers. So blended were the transactions, that no assignment of the notes, which carried upon their face notice of probable or possible defenses, could separate these equities from the terms of the contract. *Chamberlain* v. *Gorham* (1822), 20 Johns. 144; *Rockwell* v. *Daniels* (1855), 4 Wis. 452. In the last case it is said: "It [the implied right to claim damages for nonperformance] existed at the making of the contract, and at the time of its assignment, and the assignee had notice of that equitable right, and that it would become available to the defendant the moment the plaintiffs (or their assignors) should commit a breach, and Young took it subject to such equity."

It follows that the court committed no error in its conclusions of law. Judgment affirmed.