AETNA TRUST AND SAVINGS COMPANY *v.* NACKEN-
HORST, RECEIVER, ET AL.

[No. 23,083.    Filed March 7, 1919.    Rehearing denied December 12, 1919.]

1. RECEIVERS.—*Adjudication of Claims.*—All claims should be filed in the proceeding in which the receiver is appointed, and the priorities and the order of payment determined therein, and not by cross-complaints in an action by the receiver to reduce the fund to his possession.    p. 624.

2. MUNICIPAL CORPORATIONS.—*Construction of Sewers.*—*Assignment of Assessment Roll.*—Under §§8711 *et seq.* Burns 1914

(Acts 1907 pp. 167, 550, Acts 1909 p. 412), a contractor who has a valid contract with a city for the construction of a sewer can make a valid assignment to a third party of the assessment roll, but the assignee acquires thereby only the contractor's interest in the assessments on the completion of the contract; and, where the contractor abandons the contract, there is no basis for any assessments against the property until the final estimate provided for in the statute can be made, and the assignment is therefore operative or enforceable only for the amount of the final estimate less the costs and expenses of completing the work, such costs being entitled to priority in the distribution of the assets, regardless of whether the work was completed by the city or by reletting the contract or by any other means authorized by law. pp. 630, 631, 635.

3. ASSIGNMENTS.—*What May be Assigned.*—Personal property and choses in action to be acquired in the future under a valid contract may be assigned, and such assignments, when fairly made for a valuable consideration, are recognized and enforced in equity. p. 630.

4. ASSIGNMENTS.—*What May be Assigned.*—A mere possibility is not the subject of assignment; the thing assigned must have an actual or a potential existence. p. 630.

5. ASSIGNMENTS.—*What May be Assigned.—Wages.*—If the thing on which an assignment is intended to operate is wages to be earned under an employment, or money to be realized by the performance of a contract, it is essential to the validity of the assignment that the contract be in actual existence at the time the assignment is made. p. 630.

6. ASSIGNMENTS.—*Operation.*—Where the subject of an equitable assignment is money to be earned in the future, either as wages or by the performance of a contract, such assignment does not become operative until some wages have been earned or something has become payable under the contract. p. 630.

7. MUNICIPAL CORPORATIONS.—*Sewers.—Construction.—Assignments.*—Where a contractor abandoned the contract for construction of a sewer, and the work was completed by a receiver, an assignee of the assessment roll who acquiesced in the appointment of the receiver and the manner of completing the work, may not question the authority of the receiver nor complain that the cost was greater than would have been necessary had some other plan been pursued in completing the work. p. 633.

8. MUNICIPAL CORPORATIONS.—*Sewers.—Construction Bond.—Liability.*—The contractor's bond for the construction of a sewer, under §8711 *et seq.* Burns 1914, was for the protection of the property affected, and the surety thereon became liable for

all unpaid claims for labor and materials which entered into the construction of the sewer, but not for money loaned or advanced to the contractor by a third person.  p. 633.

9.  MUNICIPAL CORPORATIONS.—*Sewers.*—*Construction.*—*Rights of Laborers and Materialmen.*—The statute (§§8711 *et seq.* Burns 1914) does not give to persons furnishing material, or to those performing labor, for the construction of a sewer any claim against the city or any lien on the assessments made to pay the costs of the improvement, their only remedy being against the contractor, unless the contractor's bond by its terms inures to their benefit.  p. 634.

10.  MUNICIPAL CORPORATIONS.—*Sewers.*—*Construction.*—*Priority of Claims.*—In the construction of a sewer under §8711 *et seq.* Burns 1914, unpaid claims for material furnished to a contractor who afterwards abandoned the contract have no priority over the claims of a third party who advanced money to the contractor under an equitable assignment of the proceeds of the contract, but are inferior thereto.  p. 634.

11.  MUNICIPAL CORPORATIONS.—*Sewers.*—*Construction.*—*Abandonment of Contract.*—*Rights of Receiver.*—Where a contractor for the construction of a sewer, under §8711 *et seq.* Burns 1914, abandoned the contract, a receiver appointed to complete the work was entitled to receive from the city the entire proceeds of the contract, less any amount paid to the contractor on certificates issued on partial estimates, and less also the ten per cent. which the city was required under the contract to hold for five years for the purpose of keeping the sewer in repair.  p. 634.

12.  RECEIVERS.—*Claims.*—*Priorities.*—*Construction of Sewers.*—Where a contractor for the construction of a sewer, under §8711 *et seq.* Burns 1914, abandoned the contract, and a receiver was appointed to complete the work, the costs and expenses of completing the work, including the allowance to the receiver and all court costs, were entitled to priority over all other claims.  p. 634.

From Marion Superior Court (96,964) *W. W. Thornton,* Judge.

Proceeding by William Nackenhorst, receiver, for the purpose of reducing funds to his possession, in which the Aetna Trust and Savings Company and others filed cross-complaints and asked that their claims be adjudicated.  From the decree rendered, the Aetna Trust and Savings Company appeals.  *Reversed.*

*Ward H. Watson, Sol H. Esarey, John W. Holtzman, Lewis A. Coleman,* and *William P. Evans,* for appellant.

*Walker & Hollett,* and *Major A. Downing,* for appellee.

LAIRY, J.—This is an appeal from a decree of the Marion Superior Court. The court made a special finding of facts and pronounced its conclusions of law thereon. Following its conclusions of law the court entered a decree by the terms of which the proceeds arising from the construction of a certain sewer under a contract between the city of Indianapolis and the Julius Keller Construction Company were ordered to be paid out on certain claims presented under the pleadings, the amounts of which were fixed and the priorities of which were determined.

It seems to this court that the proceedings in which the decree was rendered were irregular for the reason that it was entered in a proceeding brought by the receiver for the purpose of reducing the fund to his possession and enjoining the city, in whose hands the funds were, from disposing of them in any other manner. In this proceeding the various persons having claims against the fund filed cross-complaints asking that such claims be adjudicated, their amounts fixed, and their priorities declared. On the issue thus formed the decree referred to was entered. Under proper procedure it would seem that the receiver as the arm of the court appointing him should have reduced the fund to his possession. All claims should have been filed in the proceeding in which the receiver was appointed, and the priorities and the order of payment should have been determined in such proceeding. However, as the regularity of the proceedings is not questioned and as all questions presented on appeal rest on the findings of fact and the conclusions of law based thereon, the

questions presented will be determined without reference to the pleadings.

For brevity in stating the substance of the finding of facts, the Equitable Surety Company will be designated as the Surety company, the Aetna Trust and Savings Company will be designated as appellant, the Julius Keller Construction Company will be designated as the Construction company, the city of Indianapolis will be designated as the city, the Indianapolis Mortar and Fuel Company will be designated as the Indianapolis company, and the Cannelton Sewer Pipe Company will be designated as the Cannelton company.

The special findings show the entering into a contract on May 5, 1913, by the city and the Construction company for the construction of the sewer which contained the agreement of the latter "to furnish at their own proper cost and expense all the necessary materials and labor of every description, and to carry out and complete in a good, firm and substantial manner the construction of local sewers with their appurtenances in Schurmann Avenue;" that on May 2, 1913, the Construction company made application for surety bond agreeing that as a part of the consideration for the making of the bond the Surety company should "be subrogated to all of the applicant's rights, privileges and properties as principle and otherwise in said contract, and hereby assigns, transfers, conveys to said company all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable to the applicant at the time of such breach or default that thereafter may become due and payable" on account of the contract; that both prior to the beginning of this action, and since, the Cannelton company and the Indianapolis company made demands of the Surety company to pay for materials sold for and used in the sewer; that on

May 5, 1913, the bond of the Surety company was executed and accepted by the city, conditioned that the Construction company shall fulfill all the conditions and stipulations in its construction contract; that among the specifications contained in the contract were the agreements of the Construction company to pay all moneys due any contractor, materialman or laborer upon such sewer, and that "the contractor shall not be allowed to sublet the whole or any part of the work or make any assignment of the moneys to be paid him, without special permission in writing from the board of works, and, should this permission be violated, the said board may at its option, end and determine his contract;" that on May 5, 1913, the Construction company and the appellant entered into an agreement whereby the former was to execute to the latter an assignment of the assessment roll and the latter agreed to advance the former eighty per cent. of the assessment roll, to be used to pay labor and material bills, such advance to bear seven per cent. from day of advancement until approval of final assessment roll, to be evidenced by memorandum promissory notes, and the latter agreed to take over the assessment roll at ninety-six cents on the dollar in payment of its advances and interest, the assessments against the state and the United States excepted from this contract price; that such assignment was executed on May 5, 1913, authorizing the city comptroller to issue all warrants and bonds in payment of assessment to the appellant, and authorizing the city treasurer to pay the same, which was delivered to the city comptroller prior to May 8, 1913; that on May 5, 1913, the Construction company executed its note for $2,000 to the appellant for fees and services rendered in procuring the financing of the contract; that, in accordance with the above assignment of contract, sixteen notes were executed for moneys received totaling in amount $39,000 and provid-

ing for payment without relief from valuation and appraisement laws and waiving presentment for payment or protest for nonpayment; that on January 14, 1914, Nackenhorst was, on petition of S. J. Patterson and Company, appointed receiver of the Construction company; that the construction work was not completed and the city notified the Surety company to complete the work, but it refused, and the work was completed by the receiver; that on March 5, 1914, the receiver borrowed $1,158.69 from appellant; that the sewer was completed and the assessment roll finally adopted by the city on November 18, 1914; that on January 26, 1914, the Cannelton company filed its claim with the city for a balance due of $3,108.07, with interest at six per cent. thereon from November 3, 1913, for materials furnished and used; that on March 13, 1914, the Indianapolis company likewise filed its claim for $2,263.95 for materials furnished and used; that on February 11, 1914, the Surety company requested that the Construction company be required to pay all material and labor bills before acceptance of the work as completed; that the work was accepted, and the board of works notified the city comptroller of the approval of the final assessments amounting to $45,079.13; that upon said notice appeared the following memorandum: "Final estimate was allowed Wm. Nackenhorst, Receiver for the Julius Keller Construction Co., the Equitable Surety Co., as surety, and the Aetna Trust & Savings Co., the assignee of the assessment roll as their interests may appear;" that the appellant did advance eighty per cent. of the assessment roll as agreed; that the Construction company used $33,692.49 in payment of labor and material bills upon the sewer, and the balance of the advancement was not so used, but no evidence was presented to show that the appellant knew that fact; that the Cannelton company and the Indianapolis company each furnished the mate-

Aetna Trust, etc., Co. *v.* Nackenhorst, Rec.—188 Ind. 621.

rials to the amounts set out in their claims which were
unpaid; that the Surety company is now the owner of
the Indianapolis company's claim by assignment; that
the further sum of $2,117.19 was advanced to the Con-
struction company to pay the premiums for public and
employer liability insurance, $221.50 of which was used
on the Twenty-sixth street sewer and $1,895.69 upon
the Schurmann avenue sewer, which was included in the
sum $33,692.49 previously mentioned; that the Con-
struction company paid to the appellant a total of
$533.56 on insurance premiums, and $86.94 interest on
the $2,000 note of May 5, 1913; that the president of
the Construction company represented to the repre-
sentative of the appellant that they had funds sufficient
to pay all bills except the Indianapolis company; that
ninety-six per cent. of the assessment roll is $43,275.96,
and the advances made by the appellant to the Construc-
tion company are $2,935.64 in excess of the $43,275.96;
that the city refused at first to accept the sewer under
the contract until all material bills were paid, but later,
upon the receiver's petition, agreed to accept the work
and hold the money until all bills were paid or an order
for distribution made by a court of competent jurisdic-
tion; that the receiver expended $50 to employ an engi-
neer to assist in making the settlement; that the re-
ceiver was directed by order of court to accept $45,-
283.13, the amount of the contract price, less $204 re-
tained by the city to pay inspection charges, in full set-
tlement; that, in addition to the $33,692.49 actually ex-
pended by the Construction company, it contracted for
and used materials to the value of $5,324.11, for which
no payment was made; that an estimate was allowed
to the Surety company and appellant, as their interest
might appear, in the sum of $45,283.13, it being the
agreed consideration under the terms of the contract
for the construction of the work as adjusted, modified

and completed by the receiver under orders of the Marion Superior Court wherein said receivership was pending; that the insurance premiums were paid from the $41,000 of notes above referred to; and that the receiver and his attorneys have performed services to the amount of $2,500.

The court concluded that the city was entitled to retain $4,507.91 of the $45,079.13 under its contract; that the appellant should recover of the Construction company $46,817.93, of which $34,275.12 (for moneys advanced with interest) is preferred to all other creditors, and from the receiver $2,664.08, which is preferred to all claims except costs of administration, or a total of $37,939.20 preferred, and $12,542.81 general claims; that the Cannelton company is entitled to $3,-459.40, and the Surety company to $2,368.68, by assignment from the Indianapolis company, making a total of $5,828.08 to be paid next after the $34,275.12 of appellant; that the receiver is entitled to be paid $2,550 for services of an engineer, attorneys and himself, together with costs herein, which shall be preferred to all creditors; that the receiver is entitled to receive at once from the city whatever it has in its possession derived from the assessment for the construction of the sewer less the amount held by it as a guarantee fund, and that the city be perpetually enjoined from delivering the final assessment roll to appellant. The judgment of the trial court follows its conclusions of law.

The contention of appellant is that it was and is the sole and exclusive owner of the assessment roll, a *bona fide* purchaser for value, and therefore no one other than appellant could have any interest therein, except the city in ten per cent. thereof as a guarantee fund. Upon this contention is based all of appellant's assignments of error.

It is apparent from the reading of the sections of the

statutes in relation to the construction of sewers (§§8711-8725 Burns 1914; Acts 1907 pp. 167, 550, Acts 1909 p. 412) that the legislative intent is to give to the contractor or person performing the contract for the construction of a sewer or street improvement a lien against the property assessed for the amount of the assessment as shown by the assessment roll made after the completion of the contract and filed with the department of finance of the city, which lien is assignable. However, there is also expressed a legislative intent to give such a lien only after the work is completed and the assessments made, but the statute contains provisions giving the contractor a right to a monthly estimate and certificate for sixty-five per cent. of the work completed and a final estimate only upon completion and acceptance of the improvement. These certificates are made negotiable as inland bills of exchange. §8711 Burns 1914, *supra*. The assignment to appellant of the assessment roll was an assignment of the contractor's interest in the assessments when they should come into existence by virtue of the completion of the contract. The assignment was made upon a valid consideration after the contractor had entered into a valid and binding contract with the city.

Personal property and choses in action to be acquired in the future under a valid contract may be assigned, and such assignments, when fairly made for a valuable consideration, are recognized and enforced in equity. Pomeroy, Eq. Jurisp. (3d. ed.) §1288; *Godwin* v. *Murchison* (1907), 145 N. C. 320, 59 S. E. 154, 17 L. R. A. (N. S.) 935. A mere possibility is not the subject of assignment; it is essential that the thing assigned must have an actual or a potential existence. *Kane* v. *Clough* (1877), 36 Mich. 436, 24 Am. Rep. 599; *Low* v. *Pew* (1871), 108 Mass. 347, 11 Am. Rep. 357,

359.   If the thing on which the assignment is intended to operate is wages to be earned under an employment, or money to be realized by the performance of a contract, it is essential to the validity of the assignment that the contract should be in actual existence at the time the assignment is made. *Walton* v. *Horkan* (1900), 112 Ga. 814, 38 S. E. 105, 81 Am. St. 77, 79. Where the subject of an equitable assignment is money to be earned in the future, either as wages or by the performance of a contract, such assignment does not become operative until some wages have been earned or something has become payable under the contract. Nothing can be claimed under such an assignment until conditions have arisen which would have enabled the assignor to assert a claim successfully in the absence of such assignment. *Kintz* v. *Scully Steel, etc., Co.* (1915), 184 Ind. 169, 171, 110 N. E. 986; *Warren* ·v. *First Nat. Bank* (1893), 149 Ill. 9, 38 N. E. 122, 25 L. R. A. 746, 750; *Cooper* v. *Douglass* (1864), 44 Barb. (N. Y.) 409, 417.

The subject of the assignment under consideration in this case was the assessments to be made on the completion and acceptance of the sewer contract.

2.   At the time the assignment was made there were no assessments in existence, and none could be made under the law unless and until the work of constructing the sewer should be completed and accepted. During the progress of the work the assignor had a right, under the statute, to have partial estimates made and to have issued negotiable certificates to an amount equal to sixty-five per cent. of such partial estimates; and on completion and acceptance of the entire work he had a right to receive a final estimate. The assignee could not successfully assert any claim to any amount not shown to be payable to the assignor either on a partial or final estimate. The record shows that the as-

signor abandoned the contract before it was completed. Under such conditions there was no basis for any assessments against the property, as no final estimate could be made until the work was completed and accepted. Upon completion of the work the final estimate became available, but the amount available to the contractor would be the final estimate less the costs and expenses of completing the work. The primary and only purpose of levying assessments against property under the provisions of the statute is to provide a fund to pay the costs and expenses of the work constructed. This litigation arises over the distribution of the amount shown to be due on the final estimate after the work had been completed by a receiver appointed by the Marion Superior Court. Appellant as assignee of the proceeds of the contract cannot successfully assert a right to anything which did not become available to its assignor under the contract with the city. As the costs and expenses of completing the work after it had been abandoned by the Construction company must be deducted from the final estimate before anything could be available to the Construction company, it becomes apparent that its assignment to appellant would not be operative or enforceable for an amount greater than the final estimate less the costs and expenses of completing the work. The incompleted work at the time the contract was abandoned by appellant's assignor afforded no basis for an assignment against property. The completion of the work was required in order that the inchoate interests might be lifted up and placed on a property basis. The cost of thus completing the work must be given first place in this distribution of the assets, regardless of whether such work was done by the city directly or by reletting the contract or by any other means authorized by law.

Under the facts involved here, a receiver was ap-

pointed for the defaulting contractor and he finished the work under the orders of the court appointing him. The record does not show, and it cannot be assumed, that appellant was ignorant of the failure of its assignor to complete the work and of the appointment of a receiver, or that the work was carried forward to completion by such receiver without the knowledge of appellant. The record does not show that appellant made any objection to the work being completed in the manner stated. Having acquiesced in what was done and having received the benefits, appellant is in no position to question the authority of the receiver or to complain that the cost of completion was greater than it would have been had some other plan been pursued to complete the work.

It has been suggested that appellant, as the assignor of the contract, should be awarded the entire proceeds of the contract if necessary to repay it for money loaned on the faith of the assignment, whether the entire proceeds were earned by the contractor or not, and that the cost of completing the unfinished work after it was abandoned by the contractor should fall on the surety on the contractor's bond. It must be remembered that the bond of the contractor was given to the city for the protection of property to be affected by the improvement and to be assessed for its construction. In making the contract and in accepting the bond, the city was acting as an enforced agent of the property owners to be affected by the improvement. As surety on the contractor's bond the Surety company undertook to indemnify the city for any loss sustained by reason of the failure of the contractor to complete the work according to its contract. By the very terms of the contract and bond, the Surety company became liable for all unpaid claims for labor and materials which entered into the construction of the sewer; but it was not

liable under the law or under the contract and bond for money loaned or advanced to the contractor by a third person.

The statute does not give to persons furnishing material for the construction of a sewer, or to those performing labor thereon, any claim against the city or any lien on the assessments made to pay the cost and expenses of the improvement. Their only remedy is against the contractor, unless the bond given by the contractor by its terms inures to their benefit, in which event they may resort to the bond. Unpaid claims for material furnished to the contractor before he abandoned the work have no priority over the claims of appellant under the equitable assignment of the proceeds of the contract, but are inferior thereto.

The receiver is entitled to receive from the city the entire proceeds of the contract, less any amount that may have been paid the contractor on certificates issued on partial estimates, and less also the ten per cent. which the contract provides shall be retained by the city for five years for the purpose of keeping the sewer in repair.

The costs and expenses of completing the work after its abandonment by the Construction company, including the allowance to the receiver and all court costs, should be given priority over all other claims. *National Surety Co.* v. *Maag* (1908), 43 Ind. App. 16, 86 N. E. 862.

The balance due under the contract, including any amount may be ultimately due from the city out of the fund retained for repair of the sewer, passed to appellant under its assignment, free from any claims in favor of persons furnishing material or labor, and should be ordered paid subject only to the priority of the costs of completing the work, including money borrowed by the

receiver for that purpose and the court costs and receiver's allowance.

The court erred in its conclusions of law, and the judgment is therefore reversed, with instructions to the trial court to restate its conclusions of law in conformity with the rules stated in this opinion.

Myers, J., and Harvey, C. J., concur in the reversal, but do not agree with the reasoning or with the result reached.

## On Petition for Rehearing.

LAIRY, J.—The original opinion holds that unpaid claims for material furnished to the contractor before it abandoned the work had no priority over the claim of appellant under its equitable assignment of the proceeds of the contract. The writer of the opinion entertained some doubt as to the correctness of this statement at the time of the adoption of the opinion by the court, and, from subsequent consideration and investigation, the doubt has ripened into a conviction that the rule thus announced is erroneous.

The opinion holds that appellant's rights under the equitable assignment of the prospective assessments were such only as could have been asserted by his assignor in case no assignment had been made.

2. In order to entitle the contractor to a final estimate, it was necessary that the work should be completed and accepted by the city. If he failed to complete the contract, he would be entitled in equity to receive only the balance of the proceeds of the assessments after deducting the amount of all costs and expenses incident to the completion of the work to be done under the contract and the amount of all unpaid claims for labor and material which entered into its construction. Appellant took the assignment of the proceeds of the contract subject to all equitable defenses. *Rosenthal*

v. *Rambo* (1905), 165 Ind. 584, 76 N. E. 404, 3 L. R. A. (N. S.) 678; *Copeland* v. *Manton* (1872), 22 Ohio St. 398; *Hardaway* v. *National Surety Co.* (1908), 211 U. S. 552, 29 Sup. Ct. 202, 53 L. Ed. 321.

By the appointment of a receiver the whole controversy was drawn within the jurisdiction of a court of equity. In a court of equity having jurisdiction to declare priorities and to order a distribution of the proceeds of the contract, the rights of the assignee of such proceeds were the same that those of the assignor would have been in case no assignment had been made. If the contractor had been in court, and had been insisting on an order directing the proceeds to be turned over to him in preference to the unpaid claims allowed by the court for labor and material which entered into the construction of the work, I think there can be little doubt that the claims for such materials would be entitled to priority of payment.

For the reasons stated, I am of the opinion that the unpaid claims for materials furnished to the contractor prior to the time he abandoned the contract are entitled to preference over the claims of appellant under the equitable assignment of the proceeds of the contract.

While I vote to deny the petition for rehearing in preference to adopting the views expressed in the dissenting opinion, I do so with the mental reservation herein expressed. I have an abiding conviction that the original opinion should be modified in the manner indicated. None of the other members of the court agree that it should be so modified.

## SEPARATE OPINION.

HARVEY, J.—I agree with the prevailing opinion wherein it holds that the superior court erred in requiring that out of the assessment roll should be paid two claims for materials purchased by the contractor for

use in the construction of the sewer in question. It has been expressly held in the decisions cited that claims for materials and labor are not liens upon or chargeable against the fund raised by the assessment. Such claimants must seek payment from the contractor or his surety.

The superior court was doubly wrong in allowing payment out of the assessments to the surety of an amount the surety had paid out in a pretended purchase of one of these material accounts, because: first, such account was not chargeable against the assessment roll; and, second, the surety was liable therefor directly, and had no right as against others having equities in the fund to buy this claim and assert a prior equity securing its payment.

I cannot agree, however, that the prevailing opinion is correct in allowing as prior to the claim of appellant for money advanced on faith and security of the assessment roll the amount the receiver borrowed for use in completing the contractor's work, or in allowing priority to the costs and expenses of the receivership. While it is a fact that the receiver borrowed from appellant the sum needed and used in completing the work, and the superior court ordered that the sum so borrowed be repaid to appellant as a prior claim, it may seem on first impression to matter little, in dollars and cents, to appellant that this sum is deducted from the assessment, as it is paid to appellant after such deduction; but appellant loaned the total amount of the assessment roll, and in addition thereto loaned the amount needed to complete, and is entitled to recover both sums, and its equities as to both should be considered. If the contractor had purchased the amount of material and labor necessary to complete his contract, and had not paid therefor, there can be no doubt that his surety would have been directly liable therefor and the assessment

roll would not have been chargeable therewith. What equity protects the surety at the expense of one having an existing and valid lien on the assessment roll, where the only difference is that the receiver who is attending to the affairs of the contractor purchases the material and labor? Existing liens on property coming into the hands of a receiver are not so easily displaced or destroyed.

This is a proceeding in equity, and the result sought is a marshalling of priorities and the application of a certain fund in accord with equity. As shown by the prevailing opinion, the amount derived by assessment for sewer construction primarily constitutes the fund. The relations of the parties to this fund were originally such that the contractor would be entitled thereto under his contract. To mature his said right thereto he must perform his contract, including payment of all expenses of labor and material. Thus far his rights and obligations are rights at law. He abandoned the work. Out of this failure no equities grow in his favor. He filed bond securing such performance. The surety on this bond then became bound at law in some manner to make good the default. Such a surety is not a favorite at law or in equity. It received compensation it deemed sufficient to protect it in the event of liability on the bond.

In this case the surety refused on demand of the city to do anything. This did not add to its equities. It was expressly obligated to pay material and labor claims. This it refused to do. In an effort to save itself from one such claim it purchased the same, and asserted that it thereby was entitled, as against all others interested, to an allowance of this claim. No equity arises in its favor out of this attempted evasion of its legal obligation. If it had performed its obligation, this litigation and receivership would have been

avoided. No allowance for services of the receiver or his attorney could have been asked or made. No equity arises in its favor out of its conduct, indirectly causing this expense. Therefore, as the surety was obligated to so act as to avoid such expense, the receiver should have called upon the surety for funds to complete the contract and pay the expenses of the receivership. Equity to others demanded this, and a court of equity, having jurisdiction of all parties, should have required that the receiver collect from the surety this expense, because of its default, and the default of its principal, the contractor. In all this there is not the slightest suggestion of an equity in favor of the surety. So much for the equities of the contractor and its surety.

The city is a party to this proceeding. It is not involved at this stage, except as a stakeholder, ready to pay the right party, or to pay to the court of equity, that the court may distribute to the right party. The material claimants are parties, but they have legal remedies against the surety, and have no claims, legal or equitable, to the fund. The only other party is the Aetna Trust Company. It was induced to loan money to the contractor by the fact that a legal contract had been made between the city and the contractor, the performance of which was secured by a bond. The payment of all material and labor claims necessary to completion was secured by the bond. This was assurance that the sewer would be completed, and that the city would resort to the bond in event of default by the contractor, or that the city would complete the sewer, or cause it to be completed, at the expense of the contractor or his surety. Thus an assessment roll and the collection thereof was assured, and the statute in force when this contract was made created a lien upon the property affected at the date of the contract. Acts 1905 p. 236, §108, §8711 Burns 1914.

If, by reason of defaults and refusals of the contractor and his surety, a court of equity took jurisdiction, the exercise of its powers would bring completion at the expense of those obligated for the expense thereof. If the cost of completion exceed the contract price, the contractor or his surety must furnish the excess. Induced by all these provisions, the Aetna Trust Company agreed to and did take an assignment of the prospective assessment roll as security. The Aetna company advanced all it agreed to and more. It defaulted in nothing. It did not become an assignee of the contract, or assume any obligations thereunder, and neither law nor equity imposes any such obligation. It took the beneficial results of performance which others were obligated to complete.

It might have resisted, as might others, the appointment of a receiver, because an ample legal remedy existed in the city to cause completion at the expense of the surety. There may have been need, however, for a receiver, because neither the city, nor the contractor, nor his surety would move or act toward completion. The assignee of the roll waived nothing by allowing a court of equity to undertake working out the duties, obligations and equities of all parties. It had a right to anticipate that a court of equity would so do at the expense of those obligated therefor, and that the court would use its powers to bring in from such obligated parties the expense of so doing. When all this is considered, where does equity range the rights and priorities of the surety and the Aetna Trust Company? That is the only question here. The defaulting surety cannot stand on the same plane, as to any part of the Aetna company's advancement, with the Aetna company, which company has defaulted in nothing.

The prevailing opinion holds that in any event the

surety could only be held for that part of the expense of completion which the assessment did not pay, hence the assessments must be first applied to completion, though this damages the Aetna company's security. This might well be true if the contractor and the surety were the only parties interested in the application of the assessments; but it cannot be true where another has in good faith, and for a consideration which moved to the use and benefit of the contractor and his surety, taken as security the assessment roll.

The prevailing opinion admits that the assignee of an anticipated assessment roll takes an equitable interest, but states that this amounts to nothing except as ripened by performance of the contract. Such an equitable interest included a right to the protection of performance by those obligated thereto. The surety became responsible for the completion, and thus for the ripening of the equitable rights of the assignee, and cannot take advantage of its own wrong in failing to cause completion, and assert that its own default having prevented the assignee's rights from ripening, the assignee must suffer and the surety benefit.

Therefore I am of opinion that the trial court also erred in protecting the surety by requiring that the amount borrowed by the receiver be paid out of the assignee's assessments, and in requiring that the costs of the receivership be paid out of the assessments.

The reversal of the decree is approved, but the mandate should be that the total amount of the assessments be paid over to appellant, less the inspection charges, and including that to be released by the city at the end of the guaranty period, and, further, that the receiver be directed to proceed against the surety for the amount expended in completion, and the costs of the receiver-

ship, and, when collected, the amount advanced by appellant to the receiver should be repaid.

Myers, J., concurs herein with Harvey, J.

Note.—Reported in 122 N. E. 421, 125 N. E. 213, 123 N. E. 353.