NEW AMSTERDAM CASUALTY CO. v. CITY OF ASTORIA et al.

(District Court, D. Oregon. March 24, 1919.)

No. 7710.

1. SUBROGATION ⬾28—NECESSITY OF PAYMENT.

A surety on a public contractor's bond to pay materialmen and laborers is not entitled to be subrogated to the contractor's rights to deferred payments due from city before paying the outstanding labor and material claims.

2. MUNICIPAL CORPORATIONS ⬾370—CONTRACT—CONSTRUCTION—PAYMENT FOR WORK.

A public construction contract, making part of the consideration payable within 90 days after completion of the work, operates, not only to secure the municipality against labor and material claims, but also as an indemnity to the contractor's surety.

3. SUBROGATION ⬾7(2)—SUBROGATION TO PRIORITY OF CREDITORS.

The surety on a public contractor's bond conditioned to pay laborers and materialmen, as required by Laws Or. 1913, p. 59, has a right to indemnify itself from deferred payments due the city to the contractor, which is superior to the claims of the contractor's assignees.

4. MUNICIPAL CORPORATIONS ⬾374(1)—CONTRACTS—SURETY ON CONTRACTOR'S BONDS—REMEDY BEFORE PAYMENT.

A surety on a public contractor's bond may, before paying laborers and materialmen, require that enough of the deferred payments due from the city to the contractor to indemnify the surety be held by the city pending adjustment of the surety's liabilities and be not paid to the contractor's assignees.

In Equity. Injunction by the New Amsterdam Casualty Company against the City of Astoria and others. Interlocutory decree granted.

This is a proceeding for injunction to restrain the city of Astoria from issuing certain warrants of the city to certain creditors of the Arenz Construction Company during the pendency of the settlement of the demands of the complainant and such creditors against such construction company. The litigation grows out of the following state of facts:

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On May 1, 1917, the construction company entered into six separate and distinct contracts with the city for improving six distinct portions of the public streets of the city, and on July 25, 1917, entered into two other contracts with the city for the improvement of two other distinct portions of such streets. Under all these contracts the construction company agrees to furnish all material and perform all labor necessary for the construction of the improvement, and to pay promptly all persons supplying labor, services, or material for the prosecution and completion of the work provided for in the contract. The city agrees to pay to the construction company a sum named in each contract as a consideration for making the improvements, in warrants of the city, or from the proceeds of the sale of its bonds at par, or, in the event the bonds cannot be sold, then in such bonds at par, the payments to be made within 90 days from the time the improvement shall be accepted. The construction company further agrees to furnish a bond in a sum named, conditioned for the faithful performance of the contract, and that the contractor shall pay all persons furnishing labor or material used in the construction of the improvement, and to conform to all the requirements of the ordinances of the city and the laws of the state of Oregon relating to public works; the bond to contain other conditions not necessary to notice here. In each case the bond was to be given in a penal sum less than the agreed consideration for doing the work.

The construction company accordingly furnished a bond under each contract, in accordance with and conditioned as the stipulations required. These bonds were executed by complainant as surety, conditioned as required by the contract. As a consideration for executing the bonds, the construction company gave to complainant indemnity agreements. Besides transferring to the casualty company all tools, implements, materials, etc., that the construction company might have at any time for doing the construction work, the construction company further covenanted with the casualty company as follows: "In further consideration of the execution of said bond, the applicant hereby agrees, as of this date, that the said company shall, as surety on said bond, be subrogated to all its rights, privileges, and properties as principal and otherwise in said contract, and it hereby assigns, transfers and conveys to said company all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable to the applicant at the time of such breach or default, or that thereafter may become due and payable to it on account of said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that such money, and the proceeds of such payments and properties, shall be the sole property of the said company and to be by it credited upon any loan, cost, damage, charge, and expense sustained or incurred by it as above under its bond of suretyship."

The work was entirely completed under six of these contracts, and duly accepted by the city, prior to any controversy having arisen touching payments to be made to the contractor. The work on two of the contracts was not completed as per agreement, and the city, by resolution, called upon the casualty company, not only to complete the work, but to pay the amounts due and unpaid by the contractors to the labor and material claimants. Thereupon the casualty company undertook the completion of the work. About that time this suit was begun.

In the meantime the construction company assigned certain portions of the contract price for completing the improvements to other parties, such as the Astoria Savings Bank, the United States National Bank, and others, to be paid out of the first moneys due or to become due to the construction company under the contracts. These assignees have been made parties defendant in the bill of complaint, and have appeared and contested the proceeding. They claim a priority of right to payment out of the funds or warrants due the construction company. No such payments had been made at the time suit was instituted, but it is alleged that the city of Astoria threatened to, and would, if not restrained by the court from so doing, pay out the funds due the contractor to these assignees. The construction company is hopelessly insolvent.

James L. Conley, of Portland, Or., for complainant.

Olaf Anderson, City Atty., of Astoria, Or., for defendant City of Astoria.

G. C. & A. C. Fulton, of Astoria, Or., for defendant Astoria Savings Bank.

J. H. Kelley, of Portland, Or., for defendant Arenz Const. Co.

Anderson & Setters, of Astoria, Or., for defendant Brookfield Quarry & Towage Co.

Leroy Lomax, of Portland, Or., for defendant United States Nat. Bank of Salem.

J. H. Kelley and W. S. Hufford, both of Portland, Or., for defendants Ashley & Rumelin and Miller & Bauer.

WOLVERTON, District Judge (after stating the facts as above). It is insisted on the part of the Astoria Savings Bank, and other assignees of this fund, that the complainant is without cause of suit, because it has not as yet paid the demands that the principal is required under its contracts to pay, and therefore is without the right of subrogation. The rule is well stated by Chancellor Walworth, in Sandford v. McLean, 3 Paige (N. Y.) 122, 23 Am. Dec. 773, as follows:

"It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect. In other cases the demand of a creditor, which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished."

The principle is stated to the same effect in the headnote to Ætna Life Ins. Co. v. Middleport, 124 U. S. 534 (8 Sup. Ct. 625, 31 L. Ed. 537):

"The doctrine of subrogation in equity requires (1) that the person seeking its benefit must have paid a debt due to a third party before he can be substituted to that party's rights; and (2) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgagees, etc. The right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another."

See, to the same purpose, Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; Henningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547; Derby v. United States F. & G. Co., 87 Or. 34, 169 Pac. 500; Wasco County v. New England E. Ins. Co., 88 Or. 465, 172 Pac. 126, L. R. A. 1918D, 732, Ann. Cas. 1918E, 656.

[1-4] Counsel for complainant, however, contends that, although the casualty company is not entitled to present subrogation, it is entitled to have the funds due the contractor from the city impounded in the hands of the city until its rights to such portion of the funds as will meet the obligations of the contractor for which it is surety are determined and apportioned, and that the present suit is a proper proceeding for the accomplishment of that purpose. Let us inquire as to this.

These contracts were entered into with a municipality. The municipality is required by a statute of the state, where it enters into a contract for making public improvements, to protect the rights of laborers and materialmen, by causing the contractor to execute a bond conditioned that such contractor shall promptly make payments to all persons supplying him labor or materials for doing the work. Sess. Laws Or. 1913, p. 59. This is a public statute, of which all persons must take notice. The present bonds were given in pursuance of that statute. The whole of the consideration for each of the improvements was made payable within 90 days after the completion of the work. This operated to protect the city against the obligations imposed by law to pay the labor and material claimants, and furthermore it affords the laborer and the materialman a right of action against both the contractor and surety in the name of the state for their respective demands. Now, the retention of the entire payment until 90 days after the contract work had been completed operated as indemnity to the city for insuring full payment to the laborers and materialmen. Wasco County v. New England F. Ins. Co., supra. The court there, speaking through Mr. Justice Harris, says:

"The percentage reserved by the county out of each monthly estimate served to secure the county against any loss it might sustain on account of the nonperformance of the contract, and when Cromer abandoned his contract the county had a right to hold this fund to secure itself against any damages that might have resulted from a nonperformance of the contract by Cromer. * * * The right of the county to retain a specified percentage dates from the time the contract was entered into, and it must be conceded that until the claims for labor and material are paid the county's right to the fund is superior to that of the bank claiming by an equitable assignment from the contractor."

Moreover it operated as much for the indemnity of the surety as for that of the principal. Such is the principle declared by the court in Prairie State Bank v. United States, supra. It says:

"That a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor of the performance of the work as for him for whom the work is to be performed, that it raises an equity in the surety in the fund to be created, and that a disregard of such stipulation by the voluntary act of the creditor operates to release the sureties, is amply sustained by authority."

As bearing directly upon this question, the court in the Wasco County Case further says:

"The reserved fund is as much for the indemnity of the surety as it is for the security of the owner for whom the work is to be performed and an equity in such reserved fund is raised in behalf of the surety."

Such being the rule, and the contracts being for the prosecuting of public work, persons taking assignments from the contractor of funds to be disbursed in final payments are bound to take notice, first, of the terms of the contract; second, that the contract is accompanied by the bond of a surety, and likewise of the undertaking of the surety; and, third, that the reserve fund is for the indemnity of the surety as well as

that of the city. This subordinates the claims of the assignees of parts of the funds to become due to the demands of the surety.

Now it has been made to appear that the city is going to dissipate these funds reserved for the final payment of obligations incurred by the contractor under these contracts, by paying over to the assignees parts of the several sums due and to become due to the contractor under these contracts, and the complainant sues to have the city restrained from doing that until the conflicting interests may be adjusted, so that it can properly discharge its obligations under the bonds, and at the same time have the fund protected for its benefit, namely, that it may be reimbursed for the outlays it will be compelled to make. Equity and good conscience would seem to dictate that the complainant is entitled to have the funds remain where they are until it can ascertain its liabilities and adjust them, or so much thereof as will amply protect it against its liabilities incurred under the several bonds. Moore v. Topliff et al., 107 Ill. 241.

The complainant, in order to ascertain and have determined its liability respecting a large number of demands for labor and materials furnished for the completion of the several improvements, instituted a suit in the state court making all such claimants parties, including Miller & Bauer. This after protracted litigation, resulted in a decree against complainant in the aggregate sum of $34,517.62, which includes interest on some of the claims to the date of the judgment. The judgment itself bears interest, under the Oregon statute, at 6 per cent. from the date of its entry. In addition to these adjudicated claims, complainant has performed services towards completion of the improvements on Klaskanine and Harrison avenues, amounting in the aggregate to $4,455.45. Aside from this, the evidence tends to show that it will require an additional $1,000 to complete the Harrison avenue project.

Complainant appears not to be satisfied with the decree standing against it in the state court, and is unsettled as yet whether it will prosecute an appeal to the Supreme Court. Some questions were presented and determined in the state court which are again urged here, such as whether the complainant is liable beyond the penal sums named in the several bonds, and whether it is liable for the payment of interest in some cases, and certain costs, etc. As that case may go to the Supreme Court, I ought not to determine those questions in advance of what the Supreme Court may do, because its decision when made will be binding upon this court.

Under the terms of the several contracts, the city is not liable for payment until 90 days after completion and acceptance of the work by the common council. Payment is due on six of these contracts, but not so with the contracts for improving Klaskanine and Harrison avenues. It is not proper, therefore, that the city should be required to draw its warrants now for payment upon these two latter improvements. There, however, exists no reason why it should not draw its warrants for payment of the amounts due under the other six contracts, except for the injunction in this case.

Some of the defendants are insisting that a large amount of the money held by the city should be released from the effect of the re-

straining order, as it is not all necessary to meet the exigencies should the complainant prevail in this proceeding. Complainant's counsel has indicated his willingness, in his reply brief, for the release of a part of the funds thus impounded.

Under the evidence, the assignments to Miller & Bauer, or to Ashley & Rumelin for their account, were all, without exception, to cover labor and material claims, and are entitled to be paid in any event. The city, however, cannot be called upon to pay anything for the present upon the contracts for the Klaskanine and Harrison avenue improvements. The assignments to Miller & Bauer, or to Ashley & Rumelin for their account, under five of the other six contracts, amount in the aggregate to $11,467.05. This sum will be released from the restraining order, and the city will issue to them warrants covering this amount. The complainant will, of course, be entitled to credit for the amount on the decree against it in the state court.

In addition, the court will release $15,000 in favor of the Astoria Savings Bank and the United States National Bank of Salem, the same to be disbursed from the funds in the hands of the city arising from the six completed contracts. Covering this amount warrants will be issued to the Astoria Savings Bank as follows: On Sixth street contract, $1,000; on Exchange street contract, $5,000; on Seventh street contract, $2,000; on Jerome avenue contract, $5,100—and to the United States National Bank of Salem as follows: On Commercial street contract, $900; on Bond street contract $1,000.

The court is unable to determine this case fully at the present time, because of the fact that the demands against the surety have not been fully adjusted, and further hearing will be continued until such time as the adjustment has been made. The adjustment should be made as promptly as reasonably possible, so that the controversy may be settled at any early date.

An interlocutory decree will be drawn in conformity with this opinion.