SOUTHERN SURETY COMPANY *v.* MERCHANTS AND FARMERS BANK OF AVILLA ET AL.

[No. 26,059.   Filed June 24, 1931.   Rehearing denied January 15, 1932.]

174

*John R. Browne, William M. McLaughlin, Fred L. Bodenhafer* and *Gemmill, Browne & Campbell,* for appellant.

*Redmond & Emerick* and *Luke H. Wrigley,* for appellees.

ROLL, J.—Appellant commenced two actions in the Noble Circuit Court against the Merchants and Farmers Bank of Avilla, Indiana, hereafter referred to as "appellee," and others, including the board of commissioners, the auditor and the treasurer of Noble County, to determine priority rights in and to as certain unexpended highway funds, including retained percentage on estimates allowed, arising from the sale of bonds to pay for the construction of what was known as the

"Rich" and "Krieger" Roads, located in said county. One action related to the unexpended "Rich" Road fund, amounting to $16,191.71, and the other action related to the unexpended "Krieger" Road fund, amounting to $13,652.00.

Laborers and materialmen filed cross-complaints for the respective amounts due each of them; the number of such claimants not being disclosed by the record. The record shows that the county officials filed answers in general denial, but all parties to this appeal agree that said county officers have no active interest in this appeal and are ready and willing to pay all the money in their hands to the parties entitled to receive the same, as finally determined. The actions were consolidated for trial, and the laborers and materialmen were given judgments on their cross-complaints for their respective claims, aggregating more than $30,000; the exact amount does not appear, from which judgments no appeal has been taken and the time for taking an appeal has long since expired.

Appellant claims the said unexpended funds now in the hands of said county officials, subject to the rights of the claimants for labor performed and materials furnished in the construction of said road, for which judgments had been rendered herein on their said cross-complaints, by virtue of being surety upon the contractor's bond, given to the county by "Baker, Agerter and Thompson, Incorporated," the contractor on each of said roads, and also by virtue of two assignments executed to it by said contractor of the funds arising from the sale of the bonds issued for the construction of said roads, each of the assignments is alleged to have been executed as a part of the transaction by which appellant became surety on said construction bonds, and in consideration of its becoming such surety.

Appellee claims to be entitled to receive said money by virtue of two subsequent assignments thereof executed to it by the contractor. These assignments, as alleged in appellee's cross-complaint, had been executed to secure loans from the appellee to the contractor to provide funds with which to construct said roads.

Baker, Agerter and Thompson, Incorporated, the contractor, commenced the construction of said roads, but became financially involved and was unable to complete said roads. The board of commissioners declared the contract for the Krieger Road forfeited and relet the work to another contractor, for which work said commissioners paid the last contractor $32,880.80.

The appellee bank, and the State of Indiana, on the relation of said bank, by their cross-complaint herein, seek judgment against the contractor and appellant as surety on said contractor's bond for the amount which the bank loaned said contractor and which remains unpaid, and claim a prior lien to the money retained by the county, and ask the court to declare by its judgment that it is entitled to receive said money in preference to appellant.

The facts were found specially and are, in substance, as follows: On September 6, 1922, the board of commissioners of Noble County awarded the contracts for the construction of said roads to Baker, Agerter and Thompson, Incorporated, hereinafter referred to as "contractor"; the contract price for the Rich Road was $47,551, and for the Krieger Road, $105,473; contracts were on said day entered into for the construction of said roads, the contractor agreeing to furnish all necessary labor and material, and to construct each road in accordance with the plans and specifications which were made a part of each contract. The plans and specifications which became a part of the contracts provided that, if the contractor, for any reason failed to complete

the work, the engineer in charge, after 10 days' notice to the contractor and its surety, was given authority to complete the work and appropriate and use all material and equipment on the grounds, and enter into such contracts therefor as in his opinion were proper, cost of completion to be deducted from any money due or to become due the contractor; it provided that no money except the estimates for first month was to become due, if the engineer so elected, until the contractor satisfied the engineer he had paid, or settled for all material and equipment used and labor done, the engineer being given authority to pay such bills and deduct same from estimates; 20 per cent of all estimates was to be reserved until final completion and acceptance of the work. The county sold bonds for the construction of the Rich Road in the sum of $49,920, and for the Krieger Road in the sum of $110,400; the proceeds of such sales being in the hands of the county treasurer except as hereafter stated. Final payment was not to be made until contractor had paid all bills for material, labor, tools, implements, teams and other things needful or necessary in doing the work.

On August 7, 1922, the contractor, in anticipation of having appellant become surety on its bonds and to induce appellant to become such surety, executed on its own behalf, and also caused Baker, Agerter and Thompson, as individuals, to execute a contract, indemnifying appellant from loss. On September 5, 1922, George C. Baker, for said contractor, orally agreed to make written application to appellant to execute a contractor's bond for each of said roads and agreed that, in such applications, the contractor would assign to appellant, as indemnity, all funds and money due or to become due the contractor for the construction of the roads. On the next day, the contractor, as principal, with appellant, as surety, executed a bond in the sum of $98,500 for the

completion of the Rich Road, and a bond in the sum of $220,000 for the completion of the Krieger Road. Each of said bonds provided it should be void and of no effect if the road was completed according to contract and if the contractor paid all debts contracted in the prosecution of the work, including labor and material furnished, and for the board of laborers employed therein, and also cost of labor and material furnished to subcontractors and materialmen.

On September 7, 1922, Baker, on behalf of the contractor, and pursuant to the oral agreement of September 5, executed two written applications for a contractor's bond for each of said roads, in each of which the contractor, in order to indemnify appellant, assigned to appellant all of the contractor's right, title and interest in all the tools, plant, equipment and materials then or thereafter upon the work, and also "all payments, funds, moneys or property, due or to become due" to the contractor as provided in the contracts for the construction of the roads.

On January 16, 1923, the contractor negotiated with appellee for a loan of $20,000, to be used in the construction of the roads. In that connection, the contractor entered into a written agreement with appellee, by which, after reciting that the contractor desired to obtain a floating credit with appellee, and a borrowing account for funds to be used in the execution of said contract, the contractor agreed that the auditor of the county should turn over to appellee all checks issued to the contractor on estimates for work performed on each contract. It was also agreed between the contractor and appellee that the proceeds of all loans should be deposited with appellee subject to the checks of the contractor "for the purpose set out in the said agreement." On May 22, 1923, the contractor, desiring to increase its loan credit for an additional $25,000, entered into a sup-

plemental agreement, in substance the same as the agreement of January 16. These two agreements were executed in triplicate, one copy for each of the parties and one copy going to the county auditor.

Between January 30, 1923 and December 27, 1923, appellee loaned the contractor various amounts of money, taking its notes therefor. A few of these notes were paid, but many of them were renewed from time to time, the balance due appellee on account of these loans being $44,215.28 on principal, and $7,024.85 interest, and $5,000 for attorney fees. There is also due and owing appellee from the contractor on account of overdraft $1,192.78.

The contractor carried two checking accounts with appellee, one being in the name of the contractor and the other in the name of "J. L. Thompson." All money deposited in said two accounts belonged to the contractor, and all money checked out was for the use of the contractor. Both of these accounts were closed about January 1, 1924. The total amount of deposits in said two accounts was $138,426.87, and was made up of the loans made by appellee and estimates allowed and paid for work done by the contractors on said roads.

On June 8, 1923, the total amount then and theretofore deposited with appellee by the contractor aggregated $45,100; and was made up of said loans and a check for $100, drawn on another bank. Between January 30, 1923 and June 8, 1923, the contractor drew checks, which were honored by appellee, for labor, material, equipment, freight, operating expenses, salaries and miscellaneous items of expense incurred and contracted by the contractor in relation to the operation of its office at Indianapolis, the repair and construction of streets at Columbus, Indianapolis and Connersville, and in the construction of roads in Sangamon and Christian Counties, Illinois, all of which construction work the con-

tractor was doing under contracts with the public authorities. Said checks so drawn and honored by appellee, together with $1,527.25, principal, interest and commissions on the loans so made by appellee, aggregated $33,475.50. No part of this $33,475.50 was paid or applied to the payment of anything chargeable to either the Rich or the Krieger Road or to the payment of any debt contracted in connection therewith. During said time, the contractor drew checks which appellee honored and paid, aggregating $8,093.64, for labor and material used in the construction of the Rich and Krieger Roads, leaving a balance on deposit June 8, 1923 of $3,530.86, being the net proceeds from the loans made by appellee to the contractor. Between June 8 and July 7, 1923, additional deposits were made with appellee, as follows: Loan of June 12, $5,000, and an estimate on Krieger road, of $1,181.65.

Between June 8, and July 7, 1923, the contractor drew checks aggregating $8,757.36, for the purpose of paying items not growing out of labor, material or anything connected with the Rich or Krieger Roads. It also, during that time, drew checks which appellee paid for matters legitimately chargeable to said roads, aggregating $2,287.41; the checks so drawn exceeded the deposits in the sum of $1,432.26, all of the proceeds derived from the estimates on the said two roads being absorbed and paid out by appellee. On July 7, 1923, appellee received on account of estimates on said roads $4,916.21. Between July 7 and July 31, 1923, appellee paid out on checks drawn by the contractor for items not connected with the two roads $1,215.80, and it also paid checks chargeable to the said roads, amounting to $1,883.11, leaving a balance, after deducting the overdraft of July 7, of $385.04. Between July 31 and December 31, 1923, appellee received, on account of estimates on said roads, $57,561.32; it received from the contractor from other

sources, $24,767.69, which, with the balance of $385.04, aggregated $82,714.15. During that period, it honored and paid checks, properly chargeable to the two roads aggregating $52,701.38; it also honored and paid checks not chargeable to said roads, aggregating $31,092.32, leaving an overdraft of $1,079.65; the total loans made by appellee to the contractor aggregated $60,531.63; the total of the estimates received by appellee was $67,-419.43; the total of said loans and estimates, except $3,760.25 which was applied on one of the notes given by the contractor to appellee, was deposited with appellee; the total proceeds of the estimates received by appellee were more than sufficient to pay all of said loans and the interest thereon.

Prior to the execution of the contracts whereby appellee agreed to make the loans to the contractor and the assignment of the estimates to appellee, the contractor represented to appellee that it intended to use the entire proceeds of the loans for paying for labor and material used in the construction of the Rich and Krieger Roads; that, while it was constructing other roads in Illinois and streets in Connersville and buying road building equipment, the same had been financed from other sources and that it desired to finance the Rich and Krieger Roads with the loans from appellee; but, almost immediately after the proceeds from the loans and estimates were deposited with appellee, the contractor began to draw its checks for matters not connected with said roads and continued to so draw its checks as long as it had an account with appellee.

A large number of said checks, aggregating $74,-540.98, so drawn by the contractor, were issued to pay for things not connected with the construction and cost of said roads, and, when issued, bore on their face plainly written and itemized memoranda showing they had been issued for purposes not connected with either

of said roads, but that they had been issued for other accounts. While appellee had notice and knowledge of the purposes for which a large per cent of such checks had been issued, it never made any inquiry in relation to any transaction for which said checks, aggregating $74,-540.98, were issued, and never made any objection to the uses to which the contractor was applying and paying out said funds, and, notwithstanding the memoranda on said checks and notice, and the terms of the contracts between appellee and the contractor, appellee negligently and carelessly received, honored and paid said checks. Appellant had no knowledge that the contractor was drawing its checks and paying out the proceeds of said loans to discharge debts that did not arise out of the construction of said roads.

Appellee received as proceeds of estimates allowed and paid on said roads $67,419.43, and applied the first two estimates, amounting to $3,760.25, on one of said notes, and when it received all of the other estimates, amounting to $63,659.18, it did not apply any part of the proceeds thereof to the payment of any of said notes, but deposited the same to the credit of the contractor and permitted the latter to check against said account in payment of debts other than the debts owing appellee as evidenced by said notes, until the account was overdrawn in the sum of $1,079.65. The estimates, aggregating $67,419.43, were more than sufficient to pay all the notes executed by the contractor to appellee; appellant did not know appellee was not applying said estimates to the payment of said notes. The total amount paid out of the contractor's account was $139,506.52, of which $52,613.91 was paid out before July 7, 1923, and $86,892.61 paid after that date; at that date, all money loaned by appellee to the contractor had been placed in said checking accounts, and only $1,181.65 received from estimates had been credited to such checking accounts;

said sum of $52,613.91, so paid out before July 7, was paid out as follows: For labor, materials, etc., on Rich and Krieger Roads, $10,381.05; for equipment on said roads and elsewhere in the business of the contractor, $10,957.10; for labor, material, etc., on the two Illinois roads and the Connersville job $24,163.07; on note to appellee $1,527.25; for salaries and general expenses of the contractor $5,585.44. The $86,892.61 paid out after July 7 were paid by the contractor as follows: On Rich and Krieger Roads, $52,701.38; on debts for equipments of contractor used on Rich and Krieger Roads, and in connection with the work in Illinois and elsewhere in its business, $15,816.57; on Illinois jobs for labor, materials and freight, $98.10; on notes, interest and commission to appellee, $10,321.48; for salaries of officers of contractor, telephone bills and general expenses of contractor, $7,954.73. The total amount of estimates allowed, amount paid and amount retained on estimates up to January 7, 1924, are: estimates allowed $112,-874.35; amount paid on these estimates $90,299.49; amount retained $22,574.86. On July 13, 1923, appellee, in order to induce a Ligonier Bank to loan the contractor $15,000, to be used in the construction of the Rich and Krieger Roads, relinquished its right to estimates in favor of the Ligonier bank, authorized the payment of such estimates to the last named bank, and also consented that an estimate, dated January 7, 1924, for $7,617.60, might be paid on claims arising from the construction of said two roads, which was done, and, pursuant to this arrangement, $15,262.46, for principal and interest, was paid the Ligonier bank. The said $90,-299.49 of estimates allowed and paid were applied as follows: To partial payment of note to appellee, $3,-760.25; to appellee, and credited to accounts of the contractor in appellee bank, $63,659.18; to Ligonier Bank, $15,262.46; and on labor and material claims on

Rich and Krieger roads $7,617.60. In December, 1923, the contractor entered into three contracts for the construction of certain roads in Wabash and Lawrence Counties, Illinois, the gross contract prices being $321,-967.07. About December 1, 1923, the contractor closed down active work on the two roads in Indiana, and the two roads in Sangamon and Christian Counties, Illinois, and never did any work on the roads in Wabash and Lawrence Counties, Illinois. When the contractor so closed down its work on said roads, it was indebted for labor and material and freight used in the construction of said roads in large sums of money which it was unable to pay and has not paid. Claims were filed therefor in Indiana and Illinois as follows: With auditor of Noble County, $36,925.31; with Illinois authorities, $51,-144.67; a total of $88,069.98. The contractor owed appellant $5,808.09, for premiums on bonds. It was also owing for material used in Connersville, $6,000.00; for equipment $27,000, in addition to bank indebtedness of $104,215.28, as follows: To appellee, $49,215.28; to an Indianapolis bank, $25,000.00; to a bank at Springfield, Illinois, $10,000; to a bank at Pana, Illinois, $20,000, the $25,000 and the $10,000 being personally indorsed by Messrs. Thompson, Baker and Agerter at times when they were directors of the contractor.

The differences between the contract prices on the several roads and the values of the work completed by the contractor, on the several contracts were as follows: On Rich Road, $16,191.71; Krieger Road, $46,532.80; Christian County Road, $26,552.67; Sangamon County Road, $9,103.77, a total of $98,380.95, all of which had been drawn by the contractor, except the retained estimates on said roads, and which were as follows: On Rich Road, $7,839.81; on Krieger Road, $14,735.05; on Sangamon County Road, $8,171.60; on Christian County Road, $12,041.12; a total of $42,787.58, which would

have been available to apply on the construction of said roads if the contractor had completed the several contracts. The other assets of the contractor consisted principally of road building equipment worth $18,248.86; a claim against one Lawrence, $2,098.31; road building material in Noble County, $6,077.70; and road material in Illinois, $8,422.03, a total of $34,846.90.

On February 11, 1924, the contractor notified appellant of its inability to complete the contracts, and appellant and Messrs. Thompson, Baker and Agerter, and Baker, Agerter and Thompson, Incorporated, entered into a written contract, reciting that appellant was on the bonds of contractor for all contracts heretofore mentioned, the financial condition of the contractor, the inability of the latter to complete said contracts, and agreeing that appellant should take over the completion of the Noble County contracts and the Illinois contracts, with a provision that appellant should make an accounting to Baker, Agerter and Thompson, and, after all claims to appellant were satisfied, turn over to Thompson all moneys or things of value; that no subletting of said contracts should be negotiated before February 21, 1924, up to which time, appellant agreed to assign the contracts to any one Thompson might indicate, if appellant was satisfied with such person's financial responsibility, and up to that time, Thompson agreed to give first preference to Baker or to a company to be organized by him. The Rich Road has since been finished by the Meredith Construction Company, under the arrangement with appellant, and the Illinois roads by the Meredith Highway Construction Company, companies organized by Thompson, and in each of which he owned nearly all of the capital stock. The Krieger Road has been finished by the Meredith Construction Company, under a contract relet by the board of commissioners of Noble County. The cost of finishing said roads was: Rich and

Krieger Roads, $33,622.89; Sangamon and Christian County Roads, $54,049.97. Pursuant to the agreement of February 11, appellant took over the equipment of the contractor, subject to a balance of unpaid purchase price of $29,000; on that day there was in the treasury of Noble County $16,191.71, as a balance due for the construction of the Rich Road, and $46,532.80, balance for Krieger Road, a total of $62,724.51, of which $32,-880.80 was paid to the Meredith Construction Company on its contract for the completion of the Krieger Road.

On March 7, 1924, the contractor notified the Illinois authorities that it was unable to go ahead with the Wabash and Lawrence County contracts and that it must look to appellant as surety to carry out the contracts, and appellant was called upon to complete all of said roads in Illinois, and about said last date, appellant notified the board of commissioners of Noble County to withhold all available funds for the construction of the Rich and Krieger Roads for the benefit of appellant.

On and after February 11, 1924, J. L. Thompson, one of the indemnitors on the contract of indemnity given by the contractor to appellant, knowing the financial condition of the contractors, and being the only one of the indemnitors who was solvent and being also liable as an indorser of the contractor to banks for $35,000, in good faith, to save himself from loss, as far as possible, negotiated with appellant to sublet to him the contracts of the contractor in Indiana and Illinois, in the hope that he might make a profit and reduce his liabilities, and, for that purpose, Thompson organized the two Meredith companies heretofore mentioned, one to take over and finish the two roads in Noble County, and the other to take over the Illinois roads. Appellant thereafter refused to finish or to sublet the Krieger Road, and the board of commissioners relet the unfinished portion thereof to the Meredith Construction Company for $32,-

880.20. The road was finished under this contract, and the cost thereof paid out of the proceeds of the bonds which had been sold for the construction of that road. Appellant made arrangements with said construction company to finish the Rich Road, which it did, at a cost of $2,500, and, while said road was accepted by the county as completed, no part of the $2,500 has been paid by it. Appellant sublet the Illinois contracts to the Meredith Highway Construction Company of Illinois, and also became surety on the bonds of the construction company.

The two Meredith companies made a net profit of $1,248.97 on the contracts for the completion of the Rich and Krieger and the Illinois roads, although it suffered a loss of $742 on the first two roads. Concurrently with the execution of the bonds of the contractor on each of the Illinois roads, the contractor, to further indemnify appellant from loss, assigned to it the estimates to be allowed and paid on each of the Illinois contracts, and gave appellant a bill of sale of the equipment used on each of said roads, the assignment of estimates being in the same language as was used in the Rich and Krieger Roads. Appellant is still in possession of the equipment used in Illinois.

Many of the claims filed against the contractor and appellant are in dispute and litigation, and judgments have been rendered against the contractor and appellant on account of the Rich and Krieger Roads, aggregating $30,925.70. It is not possible to determine what the extent of appellant's liability is or when it will be adjudicated and determined. Appellant has no interest in the completion of any of the roads, either in Indiana or Illinois, except to recover the premiums on the several bonds given as surety for the contractor and to minimize its losses as far as possible. It has no claim on any profits the Meredith companies may have made on any

of the roads, and is only holding the proceeds of estimates on the roads in Illinois to indemnify it against losses on account of having become surety on the contractor's bonds in Illinois.

On December 6, 1923, the contractor gave one Humphrey a note for $5,000, in payment of cement used on the Noble County Roads. This note was indorsed by G. W. Lawrence, and, before maturity, was indorsed to appellee, and is now due and unpaid, the amount, with interest and attorney fees, being $5,862.50. Appellant and Lawrence settled their mutual accounts, the latter paying appellant $2,098.31, and appellant assuming and agreeing to pay said note, including attorney fees. There is now in the hands of the treasurer of Noble County, under the control of the board of commissioners, $16,-191.71, balance due and payable on account of the Rich Road; and $13,652.00, which is the balance due and payable on account of the Krieger Road, a total of $29,-843.71, $9,510.19 of which represents retained estimates on the Rich Road and all of said $13,652.00, due on the Krieger Road, represents retained estimates. The total of such retained estimates is $23,162.19. James L. Thompson, heretofore mentioned, owns real estate of the value of $175,000, on which there is a mortgage of $75,000, given to appellant for borrowed money.

Upon these facts, the court stated nine conclusions of law, the first, second, fourth and eighth only being involved in this appeal. The first conclusion was that appellant take nothing; the second, that appellee is entitled to said sum of $29,843.71; the fourth, that appellee is entitled to recover on account of the Lawrence note, $5,862.50; and the eighth that appellee is not entitled to recover on any of its other claims.

Appellant contends that the oral agreement made September 5, 1922, between the contractor and itself, to execute two written applications to appellant to become

its surety on the construction bonds to be given to secure the faithful performance of its contracts to construct the Rich and Krieger roads, and which applications should contain assignments of the highway funds due and to become due the contractor on account of constructing said roads; the execution of said bonds by appellant, and the subsequent approval, on September 6, 1922, of said bonds by the board of commissioners; the execution, on September 6, 1922, of the contracts between the county and the contractor for the construction of said roads; and the execution, on September 7, 1922, pursuant to said oral agreement, made September 5, 1922, of the written application for said construction bonds, each of which written applications contained an assignment of the highway funds due and to become due the contractor on account of the construction of said roads, constituted one entire transaction and should be construed together and as concurrent acts and as constituting one transaction and agreement. On the other hand, appellee contends: (1) That, inasmuch as it does not affirmatively appear that appellant has paid something on account of its being surety on the contractor's bond, or been injured or damaged in some way, and as the assignment of the highway funds by the contractor to appellant, if valid, was only to indemnify it against loss, therefore appellant has no claim to the said highway funds in the hands of the county officials, as against appellee, which has loaned money to the contractor depending upon said funds as security; (2) that the alleged assignment of said highway funds by the contractor to appellant was void, for the following reasons: (a) that, if the assignment be considered in force from the time of the oral agreement on September 5, 1922, there was nothing at that time to assign, the contracts for constructing the roads not being executed until the next day; and (b) that if said assignment be considered as binding only from the date

of the written applications, on September 7, 1922, there was no consideration therefor.

It appears from the special findings that, while there were two contracts between the contractor and appellant with reference to the assignment of the highway funds, it also appears that the first was an oral promise on the part of the contractor that it would make written assignments of said highway funds if appellant would sign its construction bonds the following day. The written assignments were made on the day after appellant signed the contractor's bond, and in pursuance to the oral promise made on September 6. These contracts between the contractor and appellant related to the same subject-matter and were made as evidence of one agreement and should be considered as one transaction. *Chicago Trust and Sav. Bank* v. *Chicago Title and Trust Co.* (1901), 190 Ill. 404, 60 N. E. 586, 83 Am. St. 138; *Palmer* v. *Palmer* (1896), 150 N. Y. 139, 55 Am. St. 653; *Sutton* v. *Beckwith* (1888), 68 Mich. 303, 36 N. W. 79, 13 Am. St. 344; *Schmueckle* v. *Waters* (1890), 125 Ind. 265, 25 N. E. 281; *Knepper* v. *Eggiman* (1912), 177 Ind. 56, 97 N. E. 161; *Carr, Admr.,* v. *Hays* (1887), 110 Ind. 408, 11 N. E. 25; 6 R. C. L. 850, 851.

Appellee argues under its first point that appellant is not entitled to the reserved percentages of the highway funds, for the reason that it does not appear that appellant has paid any of the debts for its principal, and that, therefore, the rules of subrogation do not apply. Practically all the money in dispute herein consists of retained percentages, as provided by §8396 Burns 1926, Acts 1907 p. 572, and also by the road construction contracts herein, which provide that: "Payments are to be made at such time, and in such manner, and in such amounts, as is provided by said laws and in the specifications for the construction of

said work and as further provided in this contract. But second party before it shall be entitled to receive the final payment for the construction of said improvement shall have paid any and all bills for materials, labor, tools, implements, teams and other things needful or necessary in doing of such work and shall so show to the satisfaction of first party." The money now in controversy is in the hands of the county by virtue of the above provisions of the statute and conditions in the construction contracts. The percentages reserved by the county out of each estimate served to secure the county against any loss it might sustain on account of the nonperformance of the contract, and when Baker, Agerter and Thompson, Incorporated, abandoned its contracts, the county had a right to hold this fund to secure itself against any damages that might have resulted from such nonperformance. This right dates from the time the contract was entered into, and it, therefore, follows that, until the claims for labor and materials are paid, the county's right to the fund is superior to that of the bank claiming by an assignment from the contractor. *New Amsterdam Casualty Co.* v. *City of Astoria* (1919), 256 Fed. 560; *Prairie State Bank* v. *United States* (1896), 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; *Wasco County* v. *New England, etc., Ins. Co.* (1918), 88 Ore. 465, 172 Pac. 126, L. R. A. 1918D 732, Ann. Cas. 1918E 656. The surety on a contractor's bond is entitled to the same protection. It is thus stated in the *Wasco County Case, supra,* as follows: "The reserved fund is as much for the indemnity of the surety as it is for the security of the owner for whom the work is to be performed and an equity in such reserved fund is raised in behalf of the surety."

The contracts in this case being for public improvements, persons taking assignments of funds from the

contractor are bound to take notice, first, of the terms of the contract, second, that the contract is accompanied by the bond of a surety, and likewise of the undertaking of the surety, and third, that the reserved fund is for the indemnity of the surety as well as that of the county. *New Amsterdam Casualty Co.* v. *City of Astoria, supra.*

The evidence shows that there are judgments rendered in this case against the contractor and appellant, unappealed from, amounting to over $30,000, which is more than the amount held by the county, and which both the appellee and appellant seek to recover in this case. The assignee bank in this case is in no better position than its assignor would be had there been no assignment. The contractor could not transfer to the bank any greater rights to the reserved fund than it possessed. *Prairie State Bank* v. *United States, supra.* It would appear that, in equity, if there had been no assignments by the contractor of the reserved fund and the contractor was seeking to recover said money, the court would prefer the labor and materialmen's claims and direct said fund to be first applied in satisfying said claims. We can see no good reason for giving the appellee bank any better position than would be accorded its assignor. It took said assignment subject to such equitable defenses. *Rosenthal* v. *Rambo* (1905), 165 Ind. 584, 76 N. E. 404, 3 L. R. A. (N. S.) 678; *Hardaway* v. *National Surety Co.* (1909), 211 U. S. 552, 29 Sup. Ct. 202, 53 L. Ed. 321. In the Hardaway case, the court used the following language: "Nor do we think that Hardaway and Prowell (the assignees) can complain of the disposition of the $8,300 (exactly $8,161.75), reserved payments under the contract. This sum was paid into court for work done previous to the making of the contract of June 2, 1903. . . . The Circuit Court of Appeals held that this sum,

thus paid into court should be credited upon the $13,-261.76, which the surety company had been directed to pay into court for the satisfaction of labor claims which had been proved and allowed in the case. The right of the surety to be subrogated had attached to the fund and was superior to any rights which Hardaway and Prowell had as assignees of Coyne."

It is stated by both appellant and appellee that, while the county officials filed an answer in general denial, they were taking no part in this appeal, and were willing to pay the money as the court directed, which is, for all purposes in this case, as though they had paid it into court, as is usually done. It is not contended by appellee that, had appellant paid the labor and materialmen's judgments rendered herein, it would, by the doctrine of subrogation, be entitled to the money, and that said appellee bank would have no claim thereon superior to the appellant as surety. But it claims that, inasmuch as the record does not disclose such payment by the appellant, said surety is not entitled to present subrogation. In this, we think appellee is correct. *New Amsterdam Casualty Co.* v. *City of Astoria, supra.*

This being an equity case, we think the order of the court should have been that the county officials pay said retained fund into court and direct the clerk to apply the same *pro rata* on the labor and materialmen's judgments, as said judgments amounted to more than said fund, and this shall be the order of this court, with the further direction that, in the event said labor and materialmen's judgments have been paid by appellant, then said money to be paid appellant herein.

Another question is presented which should be considered. Appellee contends that the appellant is liable as surety on the contractor's bonds for $45,294.93, being the principal of the debt, aside from the Humphrey

note, owing by said contractor to appellee bank. The special finding shows that $10,381.05 of the money loaned the contractor was used in paying bills connected with and growing out of the construction of the Rich and Krieger Roads. The bond given by the contractor, and which appellant signed as surety, contains the following provision, "and shall pay all debts contracted by said principal in the prosecution of said work, including labor and materials furnished." The bond in this case is conditioned more broadly than required by the provisions of §8393 Burns 1926. There being no statute prohibiting a board of county commissioners from taking or requiring a bond thus broadly conditioned, the bond was valid and binding. *Title Guaranty, etc., Co.* v. *State, ex rel.* (1915), 61 Ind. App. 268, 109 N. E. 237, 111 N. E. 19, and cases therein cited.

By the above-quoted provision in the bond, appellant would be liable to the appellee bank for the amount of money borrowed by the contractor, had said contractor used the money so borrowed as he had agreed with the appellee to do, namely, to pay bills properly connected with the construction of the Rich and Krieger Roads. But the contractor violated this agreement with appellee, and the special findings of facts show that appellee permitted him to violate said agreement by honoring and paying the checks, knowing at the time that they were issued in payment of bills not properly connected with the construction of said roads. But, of all the money loaned the contractor under the assignments, only $10,381.05 was used by said contractor in paying bills incurred in the construction of the Rich and Krieger Roads. By the contractor thus applying said sum in paying labor and material bills, or any other expense properly connected with the construction of the Rich and Krieger Roads, this appellant

received the benefit thereof, for, had those bills remained unpaid, appellant would have been liable therefor as surety on the contractor's bond. But, as to the balance of the loan used by the contractor in paying bills not chargeable to the Rich and Krieger Roads, appellant received no benefit therefor, and would not have been liable therefor as surety on its bond had they remained unpaid. *Title Guaranty, etc., Co.* v. *State, ex rel., supra; Montello Salt Co.* v. *State of Utah* (1911), 221 U. S. 452, 31 Sup. Ct. 706, 55 L. Ed. 810, Ann. Cas. 1912D 633; *City of Alpena* v. *Title Guaranty, etc., Co.* (1909), 158 Mich. 678, 123 N. W. 536; *Aetna Trust, etc., Co.* v. *Nackenhorst, Rec.* (1919), 188 Ind. 621, 122 N. E. 421, 123 N. E. 353, 125 N. E. 213. Therefore, appellant would be liable to appellee under the provisions of the bond for money loaned the contractor that was actually expended in the construction of the Rich and Krieger Roads, unless the appellee by its own acts has released appellant as surety on the contractor's bond. The facts show that appellee bank received from the county of the estimates on the Rich and Krieger Roads $90,299.49. The assignments to the bank by the contractor of the road funds was collateral security for the loans made by the appellee bank to the contractor, and, therefore, the bank was entitled to receive the estimates from the county as they were issued. The bank, in accepting the assignment of the road fund from the contractor as collateral security for a loan, was bound under the law to know that the contract for constructing the Rich and Krieger Roads and to pay for all labor and material used in such work was secured by a bond, and of the rights of the surety thereon. *County of Wasco County* v. *New England, etc., Ins. Co., supra; Columbia Digger Co.* v. *Sparks* (1915), 227 Fed. 780; *Title, etc., Co.* v. *Dutcher* (1913), 203 Fed. 167. The appellee bank held and collected, by virtue of the collateral security, more than sufficient funds to have

paid it in full, and thus protected the surety. The surety was interested in the funds thus collected, and the application of such collateral security to the payment of debts which it had secured by its bond. The appellee bank loaned the contractor money to construct the Rich and Krieger Roads; $10,381.05 of which was expended in the construction of said roads, and appellant, as surety on the contractor's bond, was liable to appellee bank for said amount. Appellee bank received from the contractor an assignment of the road funds as collateral security for said loan, and collected by virtue of said assignment amounts more than sufficient to have repaid appellee bank in full. But, instead of said bank applying the proceeds of said collateral security in liquidation of its debt, it placed the proceeds thereof to the credit of the contractor, who, with the knowledge and consent of said appellee bank, drew his checks against said funds in payment of other obligations, for which the appellant as surety on said contractor's bond was not liable. This action on the part of appellee bank had the effect of releasing appellant from any liability to it as surety on the contractor's bond, and brings it clearly within the rule laid down in the case of *Crim* v. *Fleming* (1885), 101 Ind. 154. In that case, it was alleged that Crim obtained a judgment against Fleming as principal and the appellee as surety. The principal debtor was clerk of the county, and, after the judgment was rendered against him, assigned to Crim about $4,000 in fees that were due him, and gave Crim authority to receive and receipt for them as they were paid. At the time the assignment of the fees was made, they were worth more than the amount of the judgment on which the appellee was surety. Later, Crim, without the knowledge of the surety, reassigned the fees to the principal debtor, Fleming. The second paragraph alleged

that the creditor undertook to collect the fees assigned to him, and he negligently failed to do so, but permitted the principal debtor to collect the fees and appropriate them to his own use. The court, in passing on the question, said: "It is quite clear that a creditor who receives from the principal debtor securities which he undertakes to collect and apply on the debt is guilty of positive negligence if he surrenders them to the principal debtor, and permits him to collect and appropriate the proceeds. Equity will not suffer the rights of the surety to be thus frittered away. There was here an express agreement to collect and apply the money to the payment of the debt, and it was a violation of this agreement to permit the principal debtor to regain possession of the securities and use them for his own benefit. The case falls within the rule that 'The surety is discharged where collateral securities held by the creditor from the principal debtor are voluntarily returned without the consent of the surety, at least to the value of such collateral securities.'" See, also, *Nichols, etc., Co.* v. *Burch* (1891), 128 Ind. 324, 27 N. E. 737; *Sterne* v. *McKinney* (1881), 79 Ind. 578; *Weik* v. *Pugh* (1884), 92 Ind. 382; *Wasson* v. *Hodshire* (1886), 108 Ind. 26, 8 N. E. 621. Appellee is not entitled, therefore, to a personal judgment against appellant as surety on the contractor's bond.

As to the contract between the appellant and Thompson, one of the members of the contracting firm, under date of Feb. 11, 1924, it was at the most a contract of indemnity, and could in no manner affect the rights herein determined, and, therefore, needs no further consideration.

The judgment is reversed, with instructions to the lower court to restate its first and second conclusions of law as herein stated, and render judgment in accordance with this opinion.

ON PETITION FOR REHEARING.

ROLL, J.—Appellee, in its petition for a rehearing of this cause, asks that the judgment herein be modified to such an extent as to permit proof to be made as to who actually paid the judgments of laborers and materialmen, if such judgments have, in truth and in fact, been paid. We do not deem this change necessary, as appellee has such a right, under the order of this court as it now stands; and, should it develop that the judgments of laborer and materialmen have, in fact, been paid, and by some one other than the appellant herein, then, and in that event, appellant would have no interest in the money in controversy, and appellee would be entitled to same.

Rehearing denied.